## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

|  |  |  |
|---|---|---|
| CONSERVATION FORCE, DALLAS SAFARI CLUB, HOUSTON SAFARI CLUB, Corey KNOWLTON, the CAMPFIRE ASSOCIATION, and the TANZANIA HUNTING OPERATORS ASSOCIATION, | § § § § § § | |
| *Plaintiff*s, | § | NO. 3:15-CV-03348-M |
| v. | § § | |
| DELTA AIR LINES, INC., | § § | |
| *Defendant*. | § § § § § | |

## DEFENDANT DELTA AIR LINES, INC.'S BRIEF IN SUPPORT OF ITS
## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

TABLE OF CONTENTS


TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 1

ARGUMENT .................................................................................................................. 4

   I.    Delta's policy of refusing to carry trophy kills as cargo does not violate any common-law duty ..................................................................................... 4

   II.    The Airline Deregulation Act of 1978 preempts Plaintiffs' state-law claim for tortious interference with business relations. ................................. 9

   III.    Plaintiffs cannot state a claim under 49 U.S.C. § 41101(a)(1) because Delta holds a certificate of public convenience and necessity ........................... 12

   IV.    Congress did not create a private right of action to enforce 49 U.S.C. § 41310(a) and § 44711(a)(4). ................................................................... 14

      A.    Neither § 44711(a)(4) nor § 41310(a) creates a federal right. ................. 17

      B.    Congress did not intend to create a private remedy under either § 44711(a)(4) or § 41310(a). .................................................................. 18

         1.    Congress provided other remedies for the enforcement of § 41310(a) and § 44711(a)(4). ..................................................... 19

         2.    Congress expressly created a private remedy to enforce a different provision of the Federal Aviation Act ........................... 22

CONCLUSION ............................................................................................................. 25

i

TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.I.B. Express, Inc. v. FedEx Corp.*,
   358 F. Supp. 2d 239 (S.D.N.Y. 2004).................................................................11

*Ackerson v. Bean Dredging LLC*,
   589 F.3d 196 (5th Cir. 2009) ...........................................................................25

*ACORN v. Fowler*,
   178 F.3d 350 (5th Cir. 1999) .............................................................................3

*Adkins v. Slater*,
   298 S.E.2d 236 (W. Va. 1982)...........................................................................7

*Air Transp. Ass'n of Am., Inc. v. Cuomo*,
   520 F.3d 218 (2d Cir. 2008)............................................................................12

*Akron, Canton & Youngstown R.R. Co. v. I.C.C.*,
   611 F.2d 1162 (6th Cir. 1979) ...........................................................................7

*Alaska Airlines, Inc. v. Carey*,
   No. 3:07-cv-5711, 2008 WL 2725796 (W.D. Wash. July 11, 2008),
   *aff'd*, 395 F. App'x 476 (9th Cir. 2010)...........................................................11

*Alexander v. Sandoval*,
   532 U.S. 275 (2001)........................................................15, 16, 17, 18, 19, 21, 23, 24

*Lopez v. Jet Blue Airways*,
   662 F.3d 593 (2d Cir. 2011)............................................................................16

*Allandale Neighborhood Ass'n v. Austin Transp. Study Policy Advisory Comm.*,
   840 F.2d 258 (5th Cir. 1988) ...........................................................................16

*Am. Airlines, Inc. v. Dep't of Transp.*,
   202 F.3d 788 (5th Cir. 2000) .............................................................................9

*Am. Airlines, Inc. v. Wolens*,
   513 U.S. 219 (1995)........................................................................................10

*Am. Trucking Ass'ns v. Atchison, T. & S. F. Ry. Co.*,
   387 U.S. 397 (1967).........................................................................................8

*Arif Naqvi v. Turkish Airlines, Inc.*,
   80 F. Supp. 3d 234 (D.D.C. 2015)....................................................................23

*Ariz. Christian Sch. Tuition Org. v. Winn*,
   536 U.S. 125 (2011).........................................................................................3

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................................4

TABLE OF AUTHORITIES
*(continued)*

Page(s)

*B.J. Alan Co. v. I.C.C.*,
   897 F.2d 561 (D.C. Cir. 1990) ...............................................................6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................4

*Bennett v. Spear*,
   520 U.S. 154 (1997) ................................................................................3

*Bonano v. E. Caribbean Airline Corp.*,
   365 F.3d 81 (1st Cir. 2004) ........................................................17, 19, 24

*Brown v. United Airlines, Inc.*,
   720 F.3d 60 (1st Cir. 2013) ...................................................................10

*California v. Sierra Club*,
   451 U.S. 287 (1981) .......................................................................16, 18, 19

*Cannon v. Univ. of Chi.*,
   441 U.S. 677 (1979) ..............................................................................18

*Casas v. Am. Airlines, Inc.*,
   304 F.3d 517 (5th Cir. 2002) ...................................................14, 15, 19, 22

*City of Burbank v. Lockheed Air Terminal Inc.*,
   411 U.S. 624 (1973) ..............................................................................24

*Cont'l Airlines, Inc. v. Am. Airlines, Inc.*,
   824 F. Supp. 689 (S.D. Tex. 1993) .......................................................11

*Cont'l Airlines, Inc. v. United Air Lines, Inc.*,
   120 F. Supp. 2d 556 (E.D. Va. 2000) ....................................................11

*Corr. Servs. Corp. v. Malesko*,
   534 U.S. 61 (2001) ................................................................................17

*Cort v. Ash*,
   422 U.S. 66 (1976) ...................................................15, 16, 17, 18, 19

*De La Paz v. Coy*,
   786 F.3d 367 (5th Cir. 2015) ...............................................................23

*Delta Air Lines, Inc. v. Civil Aeronautics Bd.*,
   543 F.2d 247 (D.C. Cir. 1976) ...............................................................7

*Diefenthal v. Civil Aeronautics Bd.*,
   681 F.2d 1039 (5th Cir. 1982) ........................................................22, 23

*DiFiore v. Am. Airlines, Inc.*,
   646 F.3d 81 (1st Cir. 2011) ...................................................................25

*Elnajjar v. Nw. Airlines, Inc.*,
   No. 4:04-cv-680, 2005 WL 1949545 (S.D. Tex. Aug. 15, 2005) ...........23

Page(s)

*Freeman v. Fahey*,
 374 F.3d 663 (8th Cir. 2004) ..................................................................21

*Frontier Airlines, Inc. v. United Air Lines, Inc.*,
 758 F. Supp. 1399 (D. Colo. 1989)..........................................................11

*Gallentine v. Hous. Auth. of City of Port Arthur, Tex.*,
 919 F. Supp. 2d 787 (E.D. Tex. 2013) .....................................................25

*Gibbs v. Am. Airlines, Inc.*,
 191 F. Supp. 2d 144 (D.D.C.2002) ...........................................................23

*Gonzaga Univ. v. Doe*,
 536 U.S. 273 (2002).............................................................................16, 18

*Hodges v. Delta Air Lines, Inc.*,
 44 F.3d 334 (5th Cir. 1995) ...........................................................9, 10, 11

*Illinois Corp. Travel, Inc. v. Am. Airlines, Inc.*,
 889 F.2d 751 (7th Cir. 1989) ...................................................................10

*Int'l Truck & Engine Corp. v. Bray*,
 372 F.3d 717 (5th Cir. 2004) ...................................................................23

*J.I. Case Co. v. Borak*,
 377 U.S. 426 (1964)..................................................................................15

*Kan. State Bank & Trust Co. v. Emery Air Freight Corp.*,
 656 F. Supp. 200 (D. Kan. 1987) ...............................................................8

*La. Landmarks Soc'y, Inc. v. City of New Orleans*,
 85 F.3d 1119 (5th Cir.1996) ....................................................................16

*Landry v. All Am. Assur. Co.*,
 688 F.2d 381 (5th Cir. 1982) ...................................................................15

*Logan v. U.S. Bank Nat'l Ass'n*,
 722 F.3d 1163 (9th Cir. 2013) ..................................................................18

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
 594 F.3d 383 (5th Cir. 2010) .....................................................................2

*Love v. Delta Air Lines*,
 310 F.3d 1347 (11th Cir. 2002) ..........................................................17, 21

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1996)....................................................................................3

*Lundeen v. Mineta*,
 291 F.3d 300 (5th Cir. 2002) ...................................................................17

*Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*,
 283 F.3d 282 (5th Cir. 2002) ...............................................................9, 10

**TABLE OF AUTHORITIES**
*(continued)*

Page(s)

*Mass. Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985)................................................................21, 22

*McCasland v. City of Castroville*,
  514 F. App'x 446 (5th Cir. 2013) ............................................24

*Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*,
  453 U.S. 1 (1981)......................................................................20

*Mo. Pac. R. Co. v. Larabee Flour Mills Co.*,
  211 U.S. 612 (1909)................................................................7, 8

*Monarch Travel Servs., Inc. v. Assoc'd Cultural Clubs, Inc.*,
  466 F.2d 552 (9th Cir. 1972) ...................................................14

*Moor v. Tex. & N.O.R. Co.*,
  75 F.2d 386 (5th Cir. 1935) .......................................................7

*Morales v. Trans World Airlines*,
  504 U.S. 374 (1992)..............................................................10, 12

*Musson Theatrical, Inc. v. Fed. Exp. Corp.*,
  89 F.3d 1244 (6th Cir. 1996) .....................................................6

*N.Y. Tel. Co. v. N.Y. Dep't of Labor*,
  440 U.S. 519 (1979)...................................................................25

*Nat'l Ass'n of Regulatory Util. Comm'rs v. F.C.C.*,
  525 F.2d 630 (D.C. Cir. 1976)......................................................5

*Northwest, Inc. v. Ginsberg*,
  134 S. Ct. 1422 (2014)...............................................................10

*Nw. Airlines, Inc. v. Transp. Workers Union of Am.*,
  451 U.S. 77 (1981).....................................................................22

*Onoh v. Nw. Airlines, Inc.*,
  613 F.3d 596 (5th Cir. 2010) .....................................................10

*Overka v. Am. Airlines, Inc.*,
  790 F.3d 36 (1st Cir.), *cert. denied,* 136 S. Ct. 372 (2015) ....10

*Peninsula Airport Commission v. National Airlines, Inc.*,
  436 F. Supp. 850 (E.D. Va. 1977) .............................................14

*Rowe v. N.H. Motor Transp. Ass'n*,
  552 U.S. 364 (2008)...............................................................12, 24

*Sam L. Majors Jewelers v. ABX, Inc.*,
  117 F.3d 922 (5th Cir. 1997) ......................................6, 9, 15, 17

*Smith v. Piedmont Aviation*,
  567 F.2d 290 (5th Cir. 1978) .....................................................23

TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Spinner v. Verbridge,*
  125 F. Supp. 2d 45 (E.D.N.Y. 2000) ...................................................23

*Statland v. Am. Airlines, Inc.,*
  998 F.2d 539 (7th Cir. 1993) ...........................................................17

*Thomas v. Tex. Dep't of Crim. Justice,*
  297 F.3d 361 (5th Cir. 2002) ...........................................................23

*Till v. Unifirst Fed. Sav. & Loan Ass'n,*
  653 F.2d 152 (5th Cir. Unit A Aug. 1981)............................................22

*Tobin v. Fed. Exp. Corp.,*
  775 F.3d 448 (1st Cir. 2014) ...........................................................25

*Touche Ross & Co. v. Redington,*
  442 U.S. 560 (1979)...........................................................15, 19, 22

*Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis,*
  444 U.S. 11 (1979) ..........................................................................19, 22

*Treiber & Straub, Inc. v. U.P.S., Inc.,*
  474 F.3d 379 (7th Cir. 2007) ..........................................................7, 8

*Trujillo v. Am. Airlines, Inc.,*
  938 F. Supp. 392 (N.D. Tex. 1995), *aff'd,* 98 F.3d 1338 (5th Cir. 1996)..............................11

*United Airlines, Inc. v. Mesa Airlines, Inc.,*
  219 F.3d 605 (7th Cir. 2000) ...........................................................10

*United States v. Dunifer,*
  219 F.3d 1004 (9th Cir. 2000) .........................................................25

*United States v. Mitchell,*
  271 U.S. 9 (1926)..........................................................................23

*Varela v. Gonzales,*
  773 F.3d 704 (5th Cir. 2014) ...........................................................25

*Virgin Atl. Airways Ltd. v. British Airways PLC,*
  872 F. Supp. 52 (S.D.N.Y. 1994)........................................................11

*Webster v. Fall,*
  266 U.S. 507 (1925) ........................................................................23

*Williams v. Midwest Express Airlines, Inc.,*
  315 F. Supp. 2d 975 (E.D. Wis. 2004)................................................23

*Wine & Spirits Wholesalers of Mass., Inc. v. Net Contents, Inc.,*
  10 F. Supp. 2d 84 (D. Mass. 1998) ...................................................11

*Woolsey v. N.T.S.B.,*
  993 F.2d 516 (5th Cir. 1993) .............................................................5

TABLE OF AUTHORITIES
*(continued)*

Page(s)

*York Co. v. Cent. R.R.*,
   70 U.S. (3 Wall.) 107 (1865) ................................................................................7

**Statutes**

49 U.S.C. § 1374(b) ...........................................................................................23

49 U.S.C. § 40101(a)(12)(B) ...............................................................................4

49 U.S.C. § 40120(c) ...........................................................................................6

49 U.S.C. § 41101(a)(1) ...................................................................2, 13, 14, 15, 22

49 U.S.C. § 41102 .............................................................................................13

49 U.S.C. § 41102(a)(1) .....................................................................................13

49 U.S.C. § 41310 .........................................................................................20, 22

49 U.S.C. § 41310(a) .....................................2, 12, 13, 15, 18, 19, 20, 21, 23, 24, 25

49 U.S.C. § 41705(a) .........................................................................................24

49 U.S.C. § 41713(b)(1) ...............................................................................10, 11, 12

49 U.S.C. § 44702 .............................................................................................13

49 U.S.C. § 44705 .............................................................................................13

49 U.S.C. § 44711 .........................................................................................20, 22

49 U.S.C. § 44711(a) .........................................................................................23

49 U.S.C. § 44711(a)(4) .................................2, 12, 13, 15, 17, 18, 19, 20, 21, 23, 25

49 U.S.C. § 46101(a)(1) .....................................................................................20

49 U.S.C. § 46101(a)(2) .....................................................................................20

49 U.S.C. § 46101(a)(4) .....................................................................................20

49 U.S.C. § 46106 .............................................................................................21

49 U.S.C. § 46107(b)(1)(A) ................................................................................21

49 U.S.C. § 46108 .......................................................................................13, 14, 22

49 U.S.C. § 46110(a) .........................................................................................20

49 U.S.C. § 46301(a)(1)(A) ................................................................................20

49 U.S.C. § 46316 .............................................................................................21

49 U.S.C. § 47107 .............................................................................................24

**Rules**

Fed. R. Civ. P. 12(b)(6) .....................................................................................1, 4

TABLE OF AUTHORITIES
*(continued)*

Page(s)

**Regulations**

14 C.F.R. § 383.2 ............................................................................................................20

14 C.F.R. § 13.305 ..........................................................................................................20

**Other Authorities**

DOT Order 2015-10 (Jan. 15, 2015)...............................................................................20

DOT Order 2014-10-14 (Oct. 17, 2014) ........................................................................20

FAA Case No. 2012WP350025 (Feb. 11, 2015) ............................................................20

FAA Case No. 2009EA700512 (Sept. 30, 2013)............................................................20

**Treatises**

13 Am. Jur. 2d *Carriers* § 289 ........................................................................................6

SAUL SORKIN, 1 GOODS IN TRANSIT § 1.01[1][b] ...........................................................6

## INTRODUCTION

The complaint in this case reads more like a press release than a pleading. Instead of detailing the operative facts or explaining the governing law, Plaintiffs make lengthy public-policy arguments about the conservation benefits of trophy hunting. Whatever the merits of those arguments might be, they do nothing to establish that Delta is legally obligated to accept and carry as cargo trophies from the killing of big game.

All three of Plaintiffs' claims suffer from fatal and incurable flaws. Plaintiffs' claim under the federal common law fails because the facts as pleaded in the complaint do not establish that Delta has breached any of its federal common-law duties as a common carrier. The Airline Deregulation Act of 1978 preempts Plaintiffs' state-law claim for tortious interference with business relations. And Plaintiffs' statutory claims fail for two reasons: Congress did not create a private right of action under Title 49, Subtitle VII of the United States Code (commonly referred to as the Federal Aviation Act) save for a single provision, and Plaintiffs have not pleaded any facts to suggest that Delta has violated that provision.

In short, Plaintiffs seek to bring claims they do not have in a forum they cannot access to enforce duties that do not exist. For these reasons, and as explained more fully below, Delta respectfully asks the Court to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## BACKGROUND

Delta is an international air carrier engaged in the business of providing commercial air transportation of both passengers and cargo throughout the United States and the world. *See* Complaint for Declaratory and Injunctive Relief (ECF 1) ("Compl.") ¶ 19. Delta does not accept for shipment as cargo any lions, leopards, elephants, rhinoceroses, or buffalo that have been killed and taken as trophies. *Id.* ¶ 41. Through this lawsuit, Plaintiffs—one individual hunter,

three organizations whose members are hunters, one organization whose members are Tanzanian tour operators, and one organization whose membership is less clear but claims to represent the interests of communities in Zimbabwe, *id.* ¶¶ 13–18—seek to force Delta to carry trophy kills as cargo. *Id.* ¶ 12; *see also id.* at 26–27 ¶¶ 3–4.

The complaint asserts three claims. Count One alleges that Delta's refusal to carry trophy kills is a form of unreasonable discrimination. Plaintiffs bring this claim under 49 U.S.C. § 41310(a), the federal common law, and unspecified federal regulations. Count Two is a claim under Texas law for tortious interference with business relations. Count Three alleges that Delta's refusal to carry trophy kills violates two of the Federal Aviation Act's certificate requirements: (1) the requirement under 49 U.S.C. § 41101(a)(1) that Delta hold a certificate of public convenience and necessity (which is issued by the Department of Transportation); and (2) the requirement under 49 U.S.C. § 44711(a)(4) that Delta hold and comply with the terms of an operating certificate (which is issued by the Federal Aviation Administration).[1]

Plaintiffs devote a good chunk of space in the complaint to articulating various harms they believe have been or will be caused by Delta's refusal to carry trophy kills as cargo, but most of these harms are not legally cognizable. Plaintiffs anticipate that many hunters will respond to Delta's trophy ban by choosing not to go safari hunting in Africa, and much of the complaint focuses on the harms Plaintiffs believe will occur as consequence of that choice. *Id.* ¶¶ 6, 9, 32, 53–55, 57. But if the hunters who make that choice are not members of the plaintiff

---

[1] For the Court's reference, a copy of Delta's FAA-issued operating certificate is attached to this motion as Exhibit A and a copy of the DOT-issued certificate of public convenience and necessity implicated by this case is attached as Exhibit B (Delta holds many different DOT-issued certificates, which are issued separately and authorize various different routes in both interstate and foreign air transportation). It is not clear that the Court needs to consider Delta's certificates to decide this motion, but it may do so if it wishes since the certificates are "attached to the motion," "central to the claim[s]," and "referenced by the complaint." *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

organizations, any harm their choices cause Plaintiffs is not actionable in this lawsuit: it is well settled that an injury that is "the result of the independent action of some third party not before the court" is not "fairly traceable to the challenged action of the defendant." *Ariz. Christian Sch. Tuition Org. v. Winn*, 536 U.S. 125, 134 (2011) (brackets omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1996)).   And if the hunters who choose not to go on safari *are* members of the plaintiff organizations, it is equally well settled that a plaintiff's "self-inflicted injuries . . . are not 'fairly traceable to the actions of the defendant.'" *ACORN v. Fowler*, 178 F.3d 350, 358 (5th Cir. 1999) (quoting *Bennett v. Spear*, 520 U.S. 154, 162 (1997)).

The extent to which any of the Plaintiffs has a personal stake in this controversy is minimal at best.  The complaint does not allege that Delta's trophy ban has prevented Plaintiffs from going on safari hunts in Africa or made it impossible for Plaintiffs to ship their trophies to the United States.  In fact, the complaint admits that Plaintiff Corey Knowlton was able to "use a different carrier" to ship his trophy to the U.S. after he killed a black rhino in Namibia last summer. *Id.* ¶ 10; *see also id.* ¶ 52.  Nonetheless, Mr. Knowlton alleges that he has been injured by Delta's trophy ban because he suffered "delay and greater expense" in shipping his black-rhino trophy home. *Id.* ¶¶ 10, 52.  The complaint does not specify the length of this alleged delay.  Nor does it specify how much it would have cost Mr. Knowlton—who paid $350,000 for the permit that allowed him to kill that black rhino, *id.* ¶ 16—to ship his trophy home on Delta versus what it cost him on the carrier he actually used.  Whether Plaintiffs will be able to substantiate these vague allegations of insubstantial injury is a question that, if it needed to be answered, could be left for another day. *See generally Lujan*, 504 U.S. at 561.  But there is no need to answer that question: it is clear *today* that the claims Plaintiffs have alleged fail as a matter of law, and those claims should be dismissed for the reasons discussed in detail below.

3

**ARGUMENT**

The Court should dismiss the complaint because it fails to state a claim upon which relief can be granted. *See* Fed R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is warranted when the complaint fails to state a claim that is a factually plausible and legally viable even when all of its factual allegations are presumed to be true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

**I.      Delta's policy of refusing to carry trophy kills as cargo does not violate any common-law duty.**

The Court should dismiss the portion of Count One that seeks relief under the federal common law because Delta (like every common carrier) has the legal right to determine what kinds of cargo it will and won't carry. There is no duty—common-law, statutory, regulatory, or otherwise—that requires a common carrier to accept and carry as cargo whatever item a would-be shipper would like to transport. Common carriers routinely adopt policies of refusing to carry certain kinds of cargo; those policies are a standard, permissible exercise of the carriers' business judgment. A common-law rule that prohibited the adoption of those policies would jeopardize the airlines' ability to make informed business decisions about which services to offer, thereby undermining Congress's goal of "relying on actual and potential competition"—not government stricture—"to decide on the variety" of available "air transportation services." *See* 49 U.S.C. § 40101(a)(12)(B). Delta is well within its rights to refuse to carry trophy kills.

Plaintiffs' argument that Delta has breached a common-law duty by refusing to carry trophy kills has no basis in law. The common law imposes a duty of equal treatment on common carriers, but that duty only requires a common carrier to treat all shippers equally. It does not obligate the carrier to accept any and all types of cargo. As the case law cited in this section makes clear, common carriers have always had the right to limit what types of cargo they will

accept for shipment, so long as the carrier applies those limits equally and evenhandedly to all customers.  That is precisely what Delta has done here.  Delta's policy of refusing to carry trophy kills as cargo applies on the same terms to every would-be shipper.  For this reason, the facts alleged in the complaint do not make out a violation of any cognizable common-law duty.

A common carrier is any carrier that "has held itself out to the public as being willing to transport persons or property for compensation, to the extent that its facilities permit." *Woolsey v. N.T.S.B.*, 993 F.2d 516, 522 (5th Cir. 1993).   A common carrier makes an offer to the public at large to provide a specified service on specified terms and "undertakes to carry . . . indifferently" for any person who accepts that offer.  *Nat'l Ass'n of Regulatory Util. Comm'rs v. F.C.C.*, 525 F.2d 630, 641 (D.C. Cir. 1976).   Familiar examples of common carriers include railroads, taxicab companies, and bus lines.

While the regulation of common carriers once was the domain of the common law, today the field has been almost entirely occupied by various federal statutes.  In some places, those statutes regulate certain aspects of a common carrier's business.  In other places, a statute dictates that a particular aspect of the carrier's business will not be regulated at all.  For example, the Airline Deregulation Act of 1978 significantly scaled back the extent to which the Federal Aviation Act of 1958—the primary federal statute regulating foreign and interstate air transportation—regulates the economic aspects of air transportation.

Despite this heavy statutory overlay, a few common-law causes of action remain available against common-carrier airlines under the federal common law.  As amended by the Airline Deregulation Act, the Federal Aviation Act contains an elaborate, comprehensive scheme of administrative and judicial remedies.  But the ADA also included a savings clause under which any remedy provided by the Federal Aviation Act is "in addition to any other remedies

provided by law." 49 U.S.C. § 40120(c). In *Sam L. Majors Jewelers v. ABX, Inc.*, the Fifth Circuit held that this savings clause preserves a small, discrete set of causes of action against air carriers under federal common law. 117 F.3d 922, 928 (5th Cir. 1997).[2]

Section 40120(c) only saves common-law causes of action that had been "clearly established" by 1978; the ADA's original savings clause preserved "remedies *now* existing at common law," and it "was re-enacted without substantive change as 49 U.S.C. § 40120(c)." *Sam L. Majors Jewelers*, 117 F.3d at 928 & n.13 (emphasis added). Section 40120(c) does not authorize the creation of new common-law causes of action. *See Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1252 (6th Cir. 1996) ("The existence of a general savings clause in a federal statute does not license a court to create a federal cause of action when the plaintiff cannot meet the normal requirements" for "the implication of a private right of action."). Thus, to proceed under federal common law, Plaintiffs must identify a cause of action that had been recognized before 1978 that entitles them to the relief they seek.

The federal common law has never recognized a cause of action against a common carrier based on the carrier's categorical refusal to carry a particular type of cargo. "An unlimited duty of carriage was never the rule." *B.J. Alan Co. v. I.C.C.*, 897 F.2d 561, 563 (D.C. Cir. 1990) (Ginsburg, R.B., J.); *see also* 13 Am. Jur. 2d *Carriers* § 289 (a "common carrier of goods is not obliged to receive and transport all kinds of goods that may be offered for carriage"); Saul Sorkin, 1 Goods In Transit § 1.01[1][b] (Lexis updated through 2015) ("[A] regulated common carrier does not have an unlimited duty to carry goods.").

---

[2] By contrast, most causes of action under *state* common law are *not* saved because the ADA contains a broad-sweeping preemption provision that preempts any state law—including business-tort claims—that seeks to challenge an airline's prices, routes, or services. This preemption provision is discussed in greater detail below, in section II.

In fact, the common law has always given common carriers the right to "delineate what they will carry" and "carry only a limited class of cargo." *Delta Air Lines, Inc. v. Civil Aeronautics Bd.*, 543 F.2d 247, 259 (D.C. Cir. 1976); *accord Riffin v. Surface Transp. Bd.*, 733 F.3d 340, 345 (D.C. Cir. 2013) ("at common law carriers could pick and choose the goods which they would transport in common carriage . . . ." (quoting *Akron, Canton & Youngstown R.R. Co. v. I.C.C.,* 611 F.2d 1162, 1166 (6th Cir. 1979))); *Adkins v. Slater*, 298 S.E.2d 236, 240 (W. Va. 1982) ("[A] common carrier need not agree to carry all kinds of property[.]  At common law a man might become a common carrier of just such kinds of property as he chose." (citation omitted)). As the Supreme Court has explained, a common carrier "may limit his services to the carriage of particular kinds of goods," and, if the carrier has done so, it is liable for refusal to carry only if the "goods offered" for shipment are "within the course of his employment." *York Co. v. Cent. R.R.*, 70 U.S. (3 Wall.) 107, 112 (1865).

For example, federal common law permits a common carrier by air to adopt a cargo policy under which the carrier will not accept for shipment any "package with an actual value of more than $50,000." *Treiber & Straub, Inc. v. U.P.S., Inc.*, 474 F.3d 379, 386 (7th Cir. 2007) (Wood, J.).  The reason is simple: a common carrier is not "obliged to accept every package." *Id.*  Rather, the decision about what types or categories of cargo to accept for carriage "is a business decision that [the carrier] is entitled to make." *Id.*

The common law did recognize an equal-treatment principle that required common carriers "to treat all shippers alike." *Mo. Pac. R. Co. v. Larabee Flour Mills Co.*, 211 U.S. 612, 620 (1909).  This equal-treatment principle prohibited a common carrier from refusing "to do for one [shipper] that which it was doing for others." *Id.* at 619; *see, e.g., Moor v. Tex. & N.O.R. Co.*, 75 F.2d 386, 387 (5th Cir. 1935) (common carrier that regularly received bales of cotton for

shipment could not refuse to accept bales of cotton tendered by plaintiff).   But this equal-treatment principle did *not* prohibit a common carrier from refusing to carry certain types or categories of cargo so long as that refusal was made "in behalf of shippers generally."   *Mo. Pac. R.*, 211 U.S. at 620; *see, e.g.*, *Kan. State Bank & Trust Co. v. Emery Air Freight Corp.*, 656 F. Supp. 200, 205 (D. Kan. 1987) (approving of a common carrier's policy of refusing to carry as cargo "currency," "negotiable securities," and other similar items).

In short, the common law's equal-treatment principle creates nothing more than a conditional duty: "*if* a [common carrier] offers [a particular] service to the public . . . , it must make that service available to any person without discrimination."   *Am. Trucking Ass'ns v. Atchison, T. & S. F. Ry. Co.*, 387 U.S. 397, 406 (1967) (emphasis added).   Nothing in the common law requires every common carrier to offer every possible type of service to the public.

Delta has not breached any of its common-law duties as a common carrier by adopting a policy of refusing to carry trophy kills as cargo.   The federal common law has never recognized a cause of action against a common carrier for adopting an evenhanded, non-discriminatory policy under which the carrier refuses to accept a certain type of cargo from any would-be shipper. And that is precisely what Delta has done.   This is not a case where Delta is carrying trophy kills for some shippers but not for Plaintiffs.   Delta does not carry trophy kills as cargo for anyone. Plaintiffs are treated exactly the same as all other Delta customers.   Plaintiffs' claim against Delta is based on an imagined duty requiring Delta to indiscriminately accept every type of cargo that might be tendered for shipment.   That duty does not exist.   At common law, a carrier is within its rights to adopt a policy under which it refuses to carry certain types of cargo.   *E.g.*, *Treiber & Straub*, 474 F.3d at 386; *Kan. State Bank & Trust*, 656 F. Supp. at 205.   Accordingly, the Court should dismiss the portion of Count One that seeks relief under federal common law.

## II.     The Airline Deregulation Act of 1978 preempts Plaintiffs' state-law claim for tortious interference with business relations.

The Court should dismiss Count Two of the complaint as preempted by federal law. Binding Fifth Circuit precedent holds that the Airline Deregulation Act of 1978 preempts a claim for tortious "interference with business relations" if the claim involves any of an airline's "services to customers."  *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 288 (5th Cir. 2002).  Carriage of cargo is one of an airline's services to its customers.  Accordingly, the ADA preempts Plaintiffs' claim for tortious interference with business relations.

Up until 1978, the airline industry was heavily regulated, essentially functioning as a cost-plus regulated oligopoly.  Under the Federal Aviation Act of 1958, airlines were required to file tariffs with the Civil Aeronautics Board listing their routes, prices, services, as well as terms and conditions of service, and they were prohibited "from charging or collecting rates or providing services which varied from their tariffs." *Sam L. Majors Jewelers*, 117 F.3d at 927.

As noted above, Congress enacted the Airline Deregulation Act in 1978 with the goal of "end[ing] federal economic regulation of commercial aviation" and "promot[ing] competition within the airline industry." *Am. Airlines, Inc. v. Dep't of Transp.*, 202 F.3d 788, 805 (5th Cir. 2000).  To be sure, airlines remain subject to extensive regulation by the FAA on matters of safety, by the Transportation Security Administration on security-related matters, and by the DOT on matters relating to consumer protection. But the Airline Deregulation Act abolished the Civil Aeronautics Board and its heavy-handed authority to dictate an "air carrier's rates, rules, and practices." *Sam L. Majors Jewelers*, 117 F.3d at 929.  The ADA reflects Congress's judgment that "efficiency, innovation, low prices, variety, and quality" in the airline industry are better "promoted by reliance on competitive market forces rather than pervasive federal regulation." *Hodges v. Delta Air Lines, Inc.*, 44 F.3d 334, 335 (5th Cir. 1995) (en banc).

"To ensure that the States would not undo federal deregulation with regulation of their own," Congress included a preemption provision in the ADA. *Morales v. Trans World Airlines*, 504 U.S. 374, 378 (1992). The ADA's preemption provision prohibits the states from enacting any "law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). "The Supreme Court has interpreted the preemptive effect of the ADA broadly." *Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596, 599 (5th Cir. 2010). While the ADA does not preempt pure breach-of-contract claims, *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228–30 (1995), it does preempt any common-law tort claim that has a connection with or reference to an airline's prices, routes, or services, *Northwest, Inc. v. Ginsberg*, 134 S. Ct. 1422, 1429–30 (2014). In practice, this means § 41713(b)(1) preempts business-tort claims against airlines while leaving claims for personal injury or property damage largely undisturbed. *Lyn-Lea Travel*, 283 F.3d at 288; *Hodges*, 44 F.3d at 336.

Consistent with the Supreme Court's direction that § 41713(b)(1) expresses a broad preemptive purpose, the Fifth Circuit has held that the ADA preempts any claim under state law for tortious "interference with business relations" that "involves [an airline's] prices and services to customers." *Lyn-Lea Travel Corp.*, 283 F.3d at 288. The Fifth Circuit is not alone. Federal courts routinely dismiss tortious-interference claims on preemption grounds when the claim challenges some aspect of an airline's prices or services.[3]

---

[3]   *See, e.g., Overka v. Am. Airlines, Inc.*, 790 F.3d 36, 39–40 (1st Cir.) (ADA preempts a tortious-interference claim challenging an airline's provision of curbside baggage-handling services), *cert. denied*, 136 S. Ct. 372 (2015); *Brown v. United Airlines, Inc.*, 720 F.3d 60, 61, 71 (1st Cir. 2013) (same); *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 610–11 (7th Cir. 2000) (Easterbrook, J.) (tortious-interference claim challenging a major carrier's allocation of routes to its regional code-share partners); *Illinois Corp. Travel, Inc. v. Am. Airlines, Inc.*, 889 F.2d 751, 754 (7th Cir. 1989) (tortious-interference claim challenging an airline's policy banning travel agencies from advertising discounted ticket prices); *Alaska Airlines, Inc. v. Carey*, No. 3:07-cv-5711, 2008 WL 2725796, at *4 (W.D. Wash. July 11, 2008) (tortious-interference claim challenging the terms and conditions of an airline's frequent flyer mileage

*(Cont'd on next page)*

An airline's carriage of cargo (or refusal to carry cargo) is a "service" within the meaning of § 41713(b)(1). *Hodges*, 44 F.3d at 337 (the term "air service" includes to "the point-to-point transportation" of "cargo"). The Fifth Circuit has explained that the term "service" includes any "bargained-for or anticipated provision of labor from one party to another" that is "necessarily included" in the contract between airline and the customer. *Id.* at 336. An airline's provision of cargo services is necessarily included in the air waybill, a specific type of contract whose sole purpose is to establish the terms and conditions governing the airline's carriage of cargo. *See, e.g.*, *Trujillo v. Am. Airlines, Inc.*, 938 F. Supp. 392, 394 (N.D. Tex. 1995) (Fitzwater, J.) (ADA preempts state-law tort claims arising out of an airline's "preparation of the Waybill and shipping of the package"), *aff'd*, 98 F.3d 1338 (5th Cir. 1996).

As these cases make clear, § 41713(b)(1) preempts Plaintiffs' claim for tortious interference with business relations. Plaintiffs' tortious-interference claim arises directly out of Delta's provision of cargo services. The conduct Plaintiffs allege to be tortious—Delta's refusal to accept trophy kills as cargo—is Delta's adoption and enforcement of a policy governing the scope of its cargo services. Plaintiffs thus seek to use Texas tort law to regulate what kinds of cargo Delta must carry—specifically, to "compel Delta to accept lawfully permitted Big Five

---

*(Cont'd from previous page)*

plan), *aff'd*, 395 F. App'x 476 (9th Cir. 2010); *A.I.B. Express, Inc. v. FedEx Corp.*, 358 F. Supp. 2d 239, 253–54 (S.D.N.Y. 2004) (tortious-interference claim challenging changes to a cargo carrier's prices and services in connection with shipments of valuable jewelry); *Cont'l Airlines, Inc. v. United Air Lines, Inc.*, 120 F. Supp. 2d 556, 570–73 (E.D. Va. 2000) (tortious-interference claim challenging an airline's carry-on baggage policy and boarding procedures); *Wine & Spirits Wholesalers of Mass., Inc. v. Net Contents, Inc.*, 10 F. Supp. 2d 84, 87 (D. Mass. 1998) (tortious-interference claim challenging a carrier's policy of accepting wine as cargo); *Virgin Atl. Airways Ltd. v. British Airways PLC*, 872 F. Supp. 52, 59, 66–67 (S.D.N.Y. 1994) (tortious-interference claim challenging airline's marketing practices, route changes, and pricing decisions); *Cont'l Airlines, Inc. v. Am. Airlines, Inc.*, 824 F. Supp. 689, 692–94, 697 (S.D. Tex. 1993) (tortious-interference claim challenging airline's ticket-pricing system and reduced ticket prices); *Frontier Airlines, Inc. v. United Air Lines, Inc.*, 758 F. Supp. 1399, 1408–10 (D. Colo. 1989) (tortious-interference claim challenging  airline's computerized reservation services).

trophies for transport." Compl at 27, ¶ 4. There is no clearer candidate for preemption than a state law "requiring airlines to provide" a specific service. *See Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 223 (2d Cir. 2008) (per curiam).

Delta has made a business decision to stop carrying trophy kills as cargo. Other carriers are free to make a different decision (and some have, *see* Compl. ¶¶ 33, 36). Plaintiffs clearly disagree with Delta's decision. And they are free to express that disagreement by taking their business to other carriers who accept trophy kills as cargo. What Plaintiffs are not free to do— what the ADA's preemption provision prohibits—is bring a tortious-interference claim that, if successful, would force Delta to provide a type of cargo service that it "does not now provide" and "would prefer not to offer." *See Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 372 (2008).[4] Permitting Plaintiffs' tortious-interference claim to go forward would allow the State of Texas to substitute "its own governmental commands" in the place of "'competitive market forces' . . . in determining the [cargo] services that [Delta] will provide." *See id.* (quoting *Morales*, 504 U.S. at 378). This is "the very effect" that Congress "sought to avoid" when it enacted § 41713(b)(1). *Id.* The Court, therefore, should dismiss Count Two of the complaint.

## III. Plaintiffs cannot state a claim under 49 U.S.C. § 41101(a)(1) because Delta holds a certificate of public convenience and necessity.

Count Three of the complaint alleges a violation of 49 U.S.C. § 41101(a)(1), but Plaintiffs cannot state a claim under § 41101(a)(1) because the Department of Transportation has issued the appropriate certificate of public convenience and necessity to Delta. The fact that Delta holds an applicable certificate of public convenience and necessity is sufficient by itself to defeat any claim under § 41101(a)(1).

---

[4] *Rowe* construed the preemption provision of a different federal statute, but the Court held that § 41713(b)(1) and the statute at issue in *Rowe* are identical in meaning and scope. *See* 552 U.S. at 370.

Title 49 U.S.C. § 46108 allows "[a]n interested person [to] bring a civil action" in federal district court "to enforce section 41101(a)(1) of this title." In turn, § 41101(a)(1) provides that "an air carrier may provide air transportation only if the air carrier holds a certificate issued under this chapter authorizing the air transportation." As used in § 41101(a)(1), the term "a certificate issued under this chapter" refers to "a certificate of public convenience and necessity" issued by the DOT. *Id.* § 41102(a)(1).

The complaint reflects some confusion on two important points. To begin with, Delta holds two different required certificates that are relevant to this lawsuit. Delta holds a certificate of public convenience and necessity, which is issued by the DOT and establishes that Delta is fit, willing, and able to provide air transportation along the specified route. *See* 49 U.S.C. § 41102. Delta also holds an operating certificate (officially known as an Air Carrier Certificate), which is issued by the Federal Aviation Administration and pertains exclusively to safety-related matters not implicated by the complaint. *See* 49 U.S.C. §§ 44702, 44705; *see also* Walker Decl. ¶ 7.

In addition, the case law recognizes a distinction between an action to enforce the requirement that a carrier *hold* a certificate of public convenience and necessity and an action to force the carrier to *comply* with the certificate's terms. In *Peninsula Airport Commission v. National Airlines, Inc.*, the plaintiff alleged that a change in service proposed by the defendant airline was "a breach of the terms and conditions of [the airline's] certificate." 436 F. Supp. 850, 852 (E.D. Va. 1977). The district court explained that the statutory predecessor to § 46108 "expressly limits a private party in interest, such as the plaintiff, to enforce [the statutory predecessor to § 41101(a)(1)], which requires a certificate," while the plaintiff's suit sought "to enforce . . . the terms of [the defendant's] certificate." *Id.* Under the Federal Aviation Act, "the terms and conditions of certificates[,] if to be enforced through court action[,] are to be enforced

by the Board [now, the DOT]." *Id.* The district court therefore dismissed the complaint on the ground that a private plaintiff's "exclusive remed[y] for . . . breach of the duties imposed by certificates" is to petition the appropriate federal agency. *Id.* at 853.

Thus, the scope of the private right of action created by § 46108 is quite limited. Section 41101(a)(1) is concerned only with ensuring that a carrier *holds* a DOT-issued certificate of public convenience and necessity. *E.g.*, *Casas v. Am. Airlines, Inc.*, 304 F.3d 517, 523 (5th Cir. 2002). Section 41101(a)(1) is *not* concerned with ensuring that a carrier is *complying* with that certificate's *terms*. Nor does § 41101(a)(1) address itself to enforcing the requirements that a carrier hold and comply with the terms of an FAA-issued operating certificate. Section 46108 only authorizes private plaintiffs to bring a single, very narrow type of claim: a claim that an airline is operating without a DOT-issued certificate of public convenience and necessity. *E.g.*, *Monarch Travel Servs., Inc. v. Assoc'd Cultural Clubs, Inc.*, 466 F.2d 552, 554 (9th Cir. 1972).

Plaintiffs have failed to plead facts that establish a violation of § 41101(a)(1). The complaint does not allege that Delta does not hold a certificate of public convenience and necessity. Nor could it. Delta holds the requisite certificate of public convenience and necessity. *See* Exhibit B; Walker Decl. ¶¶ 9–15. By obtaining this certificate from the DOT, Delta did everything that § 41101(a)(1) requires. Accordingly, the Court should dismiss the portion of Count Three that seeks relief under § 41101(a)(1).

## IV.    Congress did not create a private right of action to enforce 49 U.S.C. § 41310(a) and § 44711(a)(4).

Plaintiffs' two remaining statutory claims both fail for the same reason: there is no private cause of action. Count One of the complaint alleges a violation of 49 U.S.C. § 41310(a) (which prohibits air carriers from engaging in unreasonable discrimination), while Count Three alleges violations of 49 U.S.C. § 44711(a)(4) (prohibiting a carrier from violating the terms of its

operating certificate). The Fifth Circuit has "repeatedly held that various provisions of the [Airline Deregulation Act] do not give rise to implied private rights of action in favor of individual passengers or other consumers." *Casas*, 304 F.3d at 522 n.7. The lack of a private right of action is fatal to Plaintiffs' claims under § 41310(a) and § 44711(a)(4).

A private plaintiff has the right to bring suit under a federal statute only if Congress created that right. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979)). Congress can create a private right of action expressly or by implication. *E.g.*, *Sam L. Majors Jewelers*, 117 F.3d at 925. The Federal Aviation Act does not contain an express private right of action to enforce either § 41310(a) or § 44711(a)(4). Accordingly, Plaintiffs have a right of action under those statutes only if they can show that Congress intended to create that right by implication. They cannot.

There was a time when the federal courts would liberally imply private rights of action whenever they perceived that doing so would further the purpose of a statute. *E.g.*, *J.I. Case Co. v. Borak*, 377 U.S. 426, 433–35 (1964). But in *Cort v. Ash*, 422 U.S. 66 (1976), the Supreme Court abandoned that approach and replaced it with a four-factor test that "was more restrictive than any of its predecessors." *Landry v. All Am. Assur. Co.*, 688 F.2d 381, 388 (5th Cir. 1982). *Cort* established that "[t]he central inquiry" in determining whether a statute includes "a private cause of action" is whether "Congress intended to create" one. *Touche Ross*, 442 U.S. at 575. This inquiry into Congress's intent is guided by four factors:

1. "does the statute create a federal right in favor of the plaintiff?"
2. "is there any indication of legislative intent, explicit or implicit, [] to create" a "private remedy"?
3. "is it consistent with the underlying purposes of the legislative scheme to imply such a remedy"?
4. "is the cause of action one traditionally relegated to state law"?

*Cort*, 422 U.S. at 78.  Every cause of action contains two ingredients: "a private *right*" and *"a private remedy."  Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002) (quoting *Sandoval*, 532 U.S. at 286).  The first two *Cort* factors simply ask whether "the statute manifests an intent to create" both of those ingredients.  *Id.*  If so, the analysis moves to the third and fourth factors, which identify additional considerations that might nonetheless foreclose the implication of a private right of action.   But the third and the fourth factors are relevant *only if* both of the first two factors weigh in favor of a private right of action.  If either of the first two factors is missing, the analysis must end with the conclusion that there is no implied right of action.  *California v. Sierra Club*, 451 U.S. 287, 298 (1981); *La. Landmarks Soc'y, Inc. v. City of New Orleans,* 85 F.3d 1119, 1125 (5th Cir.1996); *Allandale Neighborhood Ass'n v. Austin Transp. Study Policy Advisory Comm.*, 840 F.2d 258, 267 (5th Cir. 1988).

In 2001, the Supreme Court "curtailed the authority of the courts to recognize implied rights of action" even further with its decision in *Alexander v. Sandoval.  Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011).  While the central inquiry remains whether Congress intended to create a private right of action, *see Sandoval*, 532 U.S. at 286, *Sandoval* articulated two important new restrictions on how that intent is to be ascertained.  First, *Sandoval* elevated the second *Cort* factor—whether Congress intended to create a private remedy—to a position of primacy.  *See id.* at 286–87.  Even where the first *Cort* factor suggests that the statute creates a personal right, that right is not privately enforceable unless there is independent evidence that Congress also intended to create a private remedy.  *See id.* at 289–91.  Second, a private right of action cannot be implied based on legislative history alone.  Instead, "the interpretive inquiry begins with the text and structure of the statute."  *Id.* at 288 n.7.  Legislative history is relevant "if—and *only* if—statutory text and structure have not resolved whether a private right of action

should be implied." *Love v. Delta Air Lines*, 310 F.3d 1347, 1353 (11th Cir. 2002); *see also Sandoval*, 532 U.S. at 288 ("legal context matters only to the extent it clarifies text").

*Sandoval* both reflected and accelerated the federal courts' ongoing "retreat[] from [their] previous willingness to imply a cause of action where Congress has not provided one." *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 67 n.3 (2001). Today, "'courts seldom imply a private right of action' because of the strong presumption against their creation." *Sam L. Majors Jewelers*, 117 F.3d at 925 n.3 (quoting *Statland v. Am. Airlines, Inc.,* 998 F.2d 539, 540 (7th Cir. 1993)); *see also Lundeen v. Mineta*, 291 F.3d 300, 312 (5th Cir. 2002) ("implying a private right of action is presumptively disfavored").

In this case, an inquiry into Congress's intent in enacting the Federal Aviation Act reveals that "Congress had no intention to create a privately enforceable right of action." *Bonano v. E. Caribbean Airline Corp.*, 365 F.3d 81, 86 (1st Cir. 2004).

**A.      Neither § 44711(a)(4) nor § 41310(a) creates a federal right.**

To begin with, § 44711(a)(4) and § 41310(a) do not reflect an intent to create a federal right in favor of Plaintiffs, as the first *Cort* factor requires. Neither statute uses the kind of "rights-creating language" that focuses on "the individuals who will ultimately benefit from" the statute. *See Sandoval*, 532 U.S. at 288–89 (quotation omitted).

Section 44711(a)(4)—which provides that a "person may not operate as an air carrier without an air carrier operating certificate or in violation of a term of the certificate"—lacks any rights-creating language. The statute does not speak in terms of individuals it might benefit; its exclusive textual focus is on the carriers it regulates. "Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Sandoval*, 532 U.S. at 289 (quoting *California*, 451 U.S. at 294).

Similarly, § 41310(a) instructs that an "air carrier or foreign air carrier may not subject a

person, place, port, or type of traffic in foreign air transportation to unreasonable discrimination."  This provision, too, addresses itself to the airlines whose conduct it regulates. It is true that § 41310(a) identifies persons traveling in foreign air transportation as its potential beneficiaries.  But the statute "is framed in terms of the obligations imposed on the regulated party;" foreign travelers are "referenced only as an object of that obligation."  *See Logan v. U.S. Bank Nat'l Ass'n*, 722 F.3d 1163, 1171 (9th Cir. 2013) (concluding that a similarly worded statute did not create a federal right).  Statutes such as § 41310(a) that are "written [] simply as a ban on discriminatory conduct by [the regulated entity]" do not reveal an intent to create a federal right.  *See Cannon v. Univ. of Chi.*, 441 U.S. 677, 691–92 (1979)*; compare id.* at 680, 690 (individual rights are created by statutes using language such as "no person shall be denied the right to vote" or "[n]o person in the United States shall, on the basis of sex, be" subjected to discrimination under a federally funded higher-education program).

The fact that neither § 44711(a)(4) nor § 41310(a) creates a federal right is sufficient, by itself, to foreclose any private right of action. *See Gonzaga*, 536 U.S. at 286 (if a statute does not create an individual right, "there is no basis for a private suit").

### B.      Congress did not intend to create a private remedy under either § 44711(a)(4) or § 41310(a).

The second *Cort* factor also weighs against the implication of a private right of action. The text and structure of the Federal Aviation Act make it clear that Congress did not intend to create a private remedy for violations of either § 41310(a) or § 44711(a)(4).  The most reliable way to gauge whether Congress intended to create an implied private remedy is to examine the menu of remedies that Congress expressly included in the statute.  *See Sandoval*, 532 U.S. at 289–91.  Two features of the statutory remedial scheme are particularly important: the remedies created for the statutory provision at issue, and the existence of a private right of action under

any other provision of the statute.   In the case of the Federal Aviation Act, both of those features point to the same conclusion: Congress did not intend to authorize civil actions by private plaintiffs under § 41310(a) and § 44711(a)(4).  This factor, too, is dispositive by itself.  *See, e.g.*, *California*, 451 U.S. at 297 ("the focus of the inquiry is on whether Congress intended to create a remedy"); *Casas*, 304 F.3d at 522 (the "touchstone of the *Cort* analysis is its second factor").[5]

### 1.    Congress provided other remedies for the enforcement of § 41310(a) and § 44711(a)(4).

The first feature of a statutory remedial scheme that is relevant to the private-right-of-action analysis is whether Congress created other remedies for violations of the statutory provision(s) at issue.  The existence of an alternative remedial scheme strongly suggests that Congress did not intend to create a private right of action.  "[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."  *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 19 (1979).  For this reason, where a statute contains "elaborate enforcement provisions it cannot be assumed that Congress intended to authorize by implication additional judicial remedies for private citizens."  *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14 (1981).

The Federal Aviation Act contains an elaborate and comprehensive scheme of administrative and judicial remedies.  Specifically, the Act creates an enforcement scheme under which § 41310(a) and § 44711(a)(4) may be enforced in any of three ways, none of which

---

[5] There is no need to engage in a separate private-right-of-action analysis concerning the allegations that Delta's embargo on hunting trophy violates various unspecified federal regulations, *see* Compl. ¶ 63 (Count One), ¶¶ 74–76 (Count Three).  "[A] regulation, on its own, cannot create a private right of action."  *Bonano*, 365 F.3d at 84 (citing *Sandoval*, 532 U.S. at 291).  "The proper inquiry"—and the only necessary inquiry—is whether the *statute* "creates a private cause of action."  *Casas*, 304 F.3d at 520.  If it does not, there can be no private right of action under regulations that merely interpret and implement the statute.  *Sandoval*, 532 U.S. at 284–86, 291; *Touche Ross*, 442 U.S. at 577 n.18.

involves a private plaintiff filing suit in federal district court.  The comprehensive scheme of administrative and judicial remedies that Congress provided for the enforcement of § 41310(a) and § 44711(a)(4) demonstrates that Congress did not intend to create any additional remedies.

First, the Act allows private plaintiffs to seek redress for a violation of the Act by commencing an administrative proceeding.  Specifically, 49 U.S.C. § 46101(a)(1) allows any person to "file a complaint in writing" with the DOT about a violation of any provision in Title 49, Subtitle VII, Part A, which includes both § 41310 and § 44711.  The DOT is *required* to "investigate the complaint if a reasonable ground appears . . . for the investigation." *Id.*

Second, the DOT and the FAA may enforce the Act's provisions by commencing an administrative proceeding on their own initiative.  *Id.* § 46101(a)(2).

The Act authorizes the DOT and the FAA to impose significant penalties in these administrative enforcement proceedings after providing notice and an opportunity for a hearing:

- <u>49 U.S.C. § 46101(a)(4)</u>: Upon a finding of a statutory violation, the agency is *required* to "issue an order to compel compliance."
- <u>*Id.* § 46301(a)(1)(A):</u> Statutory violations are punishable by a civil penalty of not more than $27,500 per day of violation.  *See* 14 C.F.R. §§ 383.2, 13.305.

These penalties are not paper tigers; the DOT and the FAA actively exercise their enforcement authority.[6]  And that enforcement authority is backstopped by 49 U.S.C. § 46110(a), which allows any "person disclosing a substantial interest in an order issued by" the agency to seek judicial review of that order in either the D.C. Circuit or the appropriate regional circuit.

Third, the Federal Aviation Act also provides two mechanisms by which its provisions

---

[6] *See, e.g.*, DOT Order 2015-10 (Jan. 15, 2015) (imposing $1.6 million penalty on Southwest Airlines for violating DOT regulations); DOT Order 2014-10-14 (Oct. 17, 2014) (imposing $260,000 penalty Cathay Pacific Airways); FAA Case No. 2012WP350025 (Feb. 11, 2015) (imposing at $350,000 penalty on Hawaiian Airlines for violating FAA regulations); FAA Case No. 2009EA700512 (Sept. 30, 2013) (imposing a $1,595,000 penalty on Federal Express).

may be enforced via a civil action in federal district court.  The DOT "may bring a civil action against a person in a district court of the United States to enforce" both § 41310(a) and § 44711(a)(4).  *See* 49 U.S.C. § 46106.  And upon request from the DOT, "the Attorney General may bring a civil action in an appropriate court to enforce" those same provisions.  *Id.* § 46107(b)(1)(A).  Violations of § 41310(a) are also punishable by criminal fine.  *Id.* § 46316.

This elaborate enforcement scheme makes it clear that Plaintiffs' inability to bring suit in federal court would not leave them without a remedy if there were any merit to the statutory violations they allege in their complaint (which there is not).  More to the point, however, this "carefully integrated" enforcement scheme reflects a considered, deliberate choice by Congress that "provide[s] strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly."  *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985).  The Supreme Court held in *Sandoval* that "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."  532 U.S. at 290.  Congress expressly provided not one but *three* methods of enforcing § 41310(a) and § 44711(a)(4).  Two of those methods give "private litigants" the "right to review of administrative action in the courts of appeals," which "powerfully suggests that Congress did not intend to provide other rights of action."  *Love*, 310 F.3d at 1357.  And the third allows "for judicial enforcement through a civil action by" either the DOT or the Attorney General, "suggesting Congress intended to place enforcement in the hands of [government officials], rather than private parties."  *See Freeman v. Fahey*, 374 F.3d 663, 665 (8th Cir. 2004).  Congress's enactment of this "integrated system of procedures for enforcement" creates an all-but-irrebuttable presumption that a private right of action "was deliberately omitted from [the] statute."  *See Mass. Mut. Life Ins.*, 473 U.S. at 147 (quoting *Nw. Airlines, Inc. v. Transp.*

*Workers Union of Am.,* 451 U.S. 77, 97 (1981)).

> **2.      Congress expressly created a private remedy to enforce a different provision of the Federal Aviation Act.**

The second feature of a statute's remedial scheme that is especially relevant to the existence of an *implied* private right of action is the existence of any *express* private rights of action.  If Congress chose to create a private right of action for other provisions of the statutory scheme but not for the provision(s) the plaintiff seeks to enforce, this choice weighs heavily against any suggestion that Congress intended to create a private right of action by implication. "When Congress has established a detailed enforcement scheme, which expressly provides a private right of action for violations of specific provisions, that is a strong indication that Congress did not intend to provide private litigants with a means of redressing violations of other sections of the Act."  *Casas,* 304 F.3d at 523 (quoting *Diefenthal v. Civil Aeronautics Bd.*, 681 F.2d 1039, 1049 (5th Cir. 1982)).

The Federal Aviation Act contains an express private right of action that does not authorize suits to enforce § 41310 or § 44711.  As discussed above, *supra* § III, 49 U.S.C. § 46108 gives private plaintiffs a cause of action to enforce the requirement in § 41101(a)(1) that an air carrier hold a DOT-issued certificate of public convenience and necessity.

Congress's decision to expressly create a private right of action under only one provision of the Federal Aviation Act shows that Congress did not intend to create any other private rights of action by implication.  Section 46108 establishes that "when Congress wished to provide a private [] remedy, it knew how to do so and did so expressly."  *Till v. Unifirst Fed. Sav. & Loan Ass'n*, 653 F.2d 152, 160 (5th Cir. Unit A Aug. 1981) (quoting *Touche Ross*, 442 U.S. at 572). The fact that Congress remembered to create an express private right of action to enforce § 41101(a)(1) makes it "highly improbable that Congress absentmindedly forgot to mention an

intended private action" to enforce other provisions of the Act.  *See TAMA*, 444 U.S. at 20

(citation omitted)).

\* \* \*

These two features of the Federal Aviation Act's remedial scheme demonstrate that

Congress did not intend to create by implication a private remedy allowing plaintiffs to bring suit

in federal court over alleged violations of § 41310(a) and § 44711(a)(4).  Little wonder, then,

that the only federal court ever to take up the question concluded "that no private right of action

exists" under § 44711(a).  *Spinner v. Verbridge,* 125 F. Supp. 2d 45, 53 (E.D.N.Y. 2000).  In the

same vein, numerous federal courts have concluded that "section 41310 of the ADA does not

provide a private cause of action."  *Arif Naqvi v. Turkish Airlines, Inc.*, 80 F. Supp. 3d 234, 239

n.7 (D.D.C. 2015) ((brackets omitted) (quoting *Gibbs v. Am. Airlines, Inc.,* 191 F. Supp. 2d 144,

146 (D.D.C.2002)); *accord Elnajjar v. Nw. Airlines, Inc.*, No. 4:04-cv-680, 2005 WL 1949545,

at \*6 (S.D. Tex. Aug. 15, 2005); *Williams v. Midwest Express Airlines, Inc.,* 315 F. Supp. 2d

975, 979 (E.D. Wis. 2004).[7]

---

[7]  In a case that pre-dates *Sandoval* by almost twenty years, the Fifth Circuit once suggested that it had recognized an implied private right of action under 49 U.S.C. § 1374(b)—the statutory predecessor to § 41310(a)—but that suggestion was incorrect and in any event does not bind this Court.  In *Diefenthal v. Civil Aeronautics Board*, 681 F.2d 1039 (5th Cir. 1982), the court cited *Smith v. Piedmont Aviation*, 567 F.2d 290 (5th Cir. 1978), for the proposition that "[t]his circuit has implicitly recognized a private right of action under section 1374(b)."  681 F.2d at 1050.  But *Smith* did nothing more than uphold a damages award under § 1374(b); it did not even acknowledge—much less decide—the question of whether there was a private right of action under § 1374(b).  *See* 567 F.2d at 292.  As such, *Smith* is not precedent on that question.  *E.g., Thomas v. Tex. Dep't of Crim. Justice*, 297 F.3d 361, 370 n. 11 (5th Cir. 2002) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925))); *accord De La Paz v. Coy*, 786 F.3d 367, 373 (5th Cir. 2015) (quoting *United States v. Mitchell*, 271 U.S. 9, 14 (1926)).

*Diefenthal*'s statement that the Fifth Circuit "has implicitly recognized a private right of action under section 1374(b)" is also non-precedential.  *Diefenthal* did not hold that private plaintiffs had a right to bring claims under § 1374(b).  *Diefenthal*'s held that there had been no violation of the statute "even if an implied right of action exists under section 1374(b)."  681 F.2d at 1050.  Since *Diefenthal*'s statement about the existence of a private right of action was not "necessary to the result" and "could have been

*(Cont'd on next page)*

23

What's more, the Fifth Circuit and at least three of its sister circuits have concluded that "49 U.S.C. § 47107 and its predecessor statute do not create a private right of action for parties aggrieved by alleged discrimination." *McCasland v. City of Castroville*, 514 F. App'x 446, 448 (5th Cir. 2013) (per curiam) (citing cases from the First, Sixth, and Eighth Circuits). These cases are persuasive because § 47107(a)(1)—which requires operators of federally funded airports to make their airports "available for public use on reasonable conditions and without unjust discrimination"—imposes a non-discrimination requirement that is very similar to § 41310(a)'s requirement that airlines "may not subject a person, place, port, or type of traffic in foreign air transportation to unreasonable discrimination."

Congress's decision not to create a private right of action under the Federal Aviation Act makes sense in light of the Act's purpose and design. Congress determined that the "objectives underlying" the Act could be fulfilled only by "a *uniform* and *exclusive* system of federal regulation." *City of Burbank v. Lockheed Air Terminal Inc.*, 411 U.S. 624, 639 (1973) (emphasis added). The absence of a private right of action works hand in glove with the ADA's preemption provision to ensure that federal regulation remains uniform and exclusive. Preemption ensures that federal regulation remains *exclusive* by foreclosing regulation by the states. *Rowe*, 552 U.S. at 373. In much the same way, the absence of a private right of action ensures "*uniform*, nationwide interpretation" of the Act by centralizing enforcement authority in the hands of the DOT and the FAA, the "'expert agenc[ies] created by Congress' to enforce the statutory scheme." *Cf. United States v. Dunifer*, 219 F.3d 1004, 1008 (9th Cir. 2000) (emphasis added) (quoting *N.Y. Tel. Co. v. N.Y. Dep't of Labor,* 440 U.S. 519, 528 (1979)). Creating a private

---

*(Cont'd from previous page)*

deleted without seriously impairing the analytical foundations of the holding," it is dictum and does not bind this Court. *See Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 721 (5th Cir. 2004).

right of action would have undermined this carefully calibrated statutory design.   If private citizens could bring suit in any of this country's 94 federal district courts, airlines would have been subjected to a regulatory "patchwork effect" created on a "verdict by verdict" basis that would have deprived them of the regulatory uniformity and predictability that Congress sought to provide.   *Cf. Tobin v. Fed. Exp. Corp.*, 775 F.3d 448, 455 (1st Cir. 2014) (citing *DiFiore v. Am. Airlines, Inc.*, 646 F.3d 81, 88 (1st Cir. 2011)).

For all of these reasons, the Court should dismiss the portion of Count One that seeks relief under § 41310(a) and the portion of Count Three that seeks relief under § 44711(a)(4).

## CONCLUSION

Delta respectfully asks the Court to dismiss the complaint in its entirety with prejudice. Dismissal with prejudice is warranted because the flaws in the complaint cannot be cured by additional allegations in an amended pleading.   There are no facts Plaintiffs could allege that would undo the Airline Deregulation Act's preemption of state-law business-tort claims, create a common-law duty or a statutory private right of action where none exists, or change the fact that Delta holds a certificate of public convenience and necessity.   Accordingly, the filing of an amended complaint would be futile.   *E.g.*, *Gallentine v. Hous. Auth. of City of Port Arthur, Tex.*, 919 F. Supp. 2d 787, 817 (E.D. Tex. 2013) ("leave to amend would be futile" on claims that "fail as a matter of law").   For this reason, Delta asks the Court to dismiss the complaint with prejudice and without any opportunity to amend or re-plead.   *See, e.g.*, *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (dismissal without leave to amend is appropriate where "the complaint as amended would be subject to dismissal" (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009))).

DATED:  December 21, 2015   Respectfully submitted,

         */s/ Russ Falconer*_____
         Russell H. Falconer
         SBN 24069695
         GIBSON, DUNN & CRUTCHER LLP
         2100 McKinney Avenue, Suite 1100
         Dallas, Texas  75201-6911
         Telephone:  (214) 698-3170
         Facsimile:  (214) 571-2958
         rfalconer@gibsondunn.com

         **ATTORNEY FOR DELTA AIR LINES, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on December 21, 2015, a true and correct copy of the foregoing document was served via the CM/ECF system upon all counsel of record.

*/s/ Russ Falconer*
Russell H. Falconer