**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

_____

| | | |
|---|---|---|
| CONSERVATION FORCE et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:15-CV-3348 |
| | ) | |
| DELTA AIR LINES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO THE
<u>MOTION TO DISMISS BY DEFENDANT DELTA AIR LINES, INC.</u>**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 4

ARGUMENT .................................................................................................................... 5

    I.     PLAINTIFFS SUFFICIENTLY ALLEGE CLAIMS THAT DELTA'S
           EMBARGO VIOLATES COMMON-LAW AND STATUTORY
           DUTIES OF EQUAL TREATMENT AND DELTA'S MOTION TO
           DISMISS SHOULD BE DENIED ....................................................................... 5

          A.     The Complaint's well-pleaded allegations withstand the Motion and
                   give Delta more than sufficient notice of Plaintiffs' claims for relief ......... 5

          B.     The Complaint properly pleads a common-law claim that Delta's
                   embargo on Big Five trophies violates a common carrier's duty of
                   equal treatment .......................................................................................... 6

          C.     The Complaint properly pleads that Delta's embargo on Big Five
                   trophies violates the statute codifying the common carrier's duty
                   of equal treatment ..................................................................................... 11

    II.     PLAINTIFFS' TORTIOUS INTERFERENCE CLAIM IS NOT
           PREEMPTED AND PROPERLY PLEADS A CLAIM FOR WHICH
           RELIEF CAN BE GRANTED BASED ON DELTA'S DEFAMATORY
           STATEMENTS AND ACTIONS ..................................................................... 16

    III.    THE COMPLAINT PLEADS A PROPER CLAIM FOR RELIEF FOR
           DELTA'S FAILURE TO OPERATE WITH A VALID CERTIFICATE ............. 22

CONCLUSION ............................................................................................................... 24

# TABLE OF AUTHORITIES

## CASES

*Adkins v. Slater*,
   298 S.E.2d 236 (W.Va. 1982) .......................................................................................... 7

*Akron, Canton, & Youngstown R.R. Co. v. ICC*,
   611 F.2d 1162 (6th Cir. 1979) ........................................................................................ 8

*Amazon Tours, Inc. v. Quest Global Angling Adventures, LLC*,
   No. 3:03-CV-2551, 2004 WL 1788078 (N.D. Tex. June 30, 2004) (Lynn, J.) ........... 20

*Am. Trucking Ass'ns, Inc. v. Atchison*,
   387 U.S. 397 (1967) .................................................................................................. 8, 10

*Archibald v. Pan Am. World Airways, Inc.*,
   460 F.2d 14 (9th Cir. 1972) .......................................................................................... 13

*Arif Naqvi v. Turkish Airlines, Inc.*,
   80 F. Supp. 3d 234 (D.D.C. 2015) ............................................................................... 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................................... 6

*Baptist Hosp. of Se. Tex., Inc. v. Baber*,
   672 S.W.2d 296 (Tex. Ct. App. 1984) .......................................................................... 22

*Bayne v. Adventure Tours USA, Inc.*,
   841 F. Supp. 206 (N.D. Tex. 1994) ........................................................................ 16, 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................................... 6

*B.J. Alan Co. v. ICC*,
   897 F.2d 561 (D.C. Cir. 1990) ....................................................................................... 7

*Brown v. United Airlines, Inc.*,
   656 F. Supp. 2d 244 (D. Mass. 2009) .......................................................................... 17

*Butler v. Flint Goodrich Hosp. of Dillard Univ.*,
   607 So. 2d 517 (La. 1992) ............................................................................................ 22

*Bynum v. Am. Airlines, Inc.*,
   166 F. App'x 730 (5th Cir. 2006) (per curiam) ...................................................... 13, 16

*Casas v. Am. Airlines, Inc.*,
    304 F.3d 517 (5th Cir. 2002) .................................................................................. 16

*Chlorine Inst., Inc. v. SOO Line R.R.*,
    792 F.3d 903 (8th Cir. 2015) .................................................................................... 8

*Cont'l Airlines, Inc. v. Kiefer*,
    920 S.W.2d 274 (Tex. 1996)) .................................................................................. 17

*Davis v. Bayless*,
    70 F.3d 367 (5th Cir. 1995) ...................................................................................... 9

*DeGirolamo v. Alitalia-Linee Aeree Italiane, S.P.A.*,
    159 F. Supp. 2d 764 (D.N.J. 2001) ......................................................................... 13

*Delta Air Lines, Inc. v. C.A.B.*,
    543 F.2d 247 (D.C. Cir. 1976) .................................................................................. 7

*Desardouin v. UPS, Inc.*,
    285 F. Supp. 2d 153 (D. Conn. 2003) ..................................................................... 18

*Diefenthal v. C.A.B.*,
    681 F.2d 1039 (5th Cir. 1982) ................................................................................. 12

*Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*,
    614 F. App'x 731 (5th Cir. 2015) .............................................................................. 6

*Elnajjar v. Nw. Airlines, Inc.*,
    No. 4:04-CV-680, 2005 WL 1949545 (S.D. Tex. Aug. 15, 2005) .......................... 15

*Fitzgerald v. Pan Am. World Airways, Inc.*,
    229 F.2d 499 (2d Cir. 1956) .................................................................................... 13

*Gemstar Group USA, Inc. v. Ferragamo USA, Inc.*,
    No. 08-CV-1822, 2008 WL 4858363 (S.D. Tex. Nov. 10, 2008) ........................... 10

*Gibbs v. Am. Airlines, Inc.*,
    191 F. Supp. 2d 144 (D.D.C. 2002) ................................................................... 14, 15

*Gulf, Colo. & Santa Fe Ry. Co. v. Hamilton*,
    57 S.W.2d 309 (Tex. Ct. App. 1933) ........................................................................ 6

*Hardware Dealers' Mut. Fire Ins. Co. of Wis. v. Glidden Co.*,
    284 U.S. 151 (1931) ................................................................................................ 22

*Hodges v. Delta Air Lines, Inc.*,
    44 F.3d 334 (5th Cir. 1995) (en banc) ......................................................... 16, 17, 22

*ICC v. Del., Lackawanna, & W. R.R. Co.*,
    220 U.S. 235 (1911) ......................................................................................... 8

*Ileto v. Glock, Inc.*,
    565 F.3d 1126 (9th Cir. 2009) ...................................................................... 22

*Jimenez v. Wood Cnty.*,
    660 F.3d 841 (5th Cir. 2011) (Smith, J., dissenting) ................................. 14

*Kan. State Bank & Trust Co. v. Emery Air Freight Corp.*,
    656 F. Supp. 200 (D. Kan. 1987) ..................................................................... 7

*Karp v. N. Cent. Air Lines, Inc.*,
    583 F.2d 364 (7th Cir. 1978) ........................................................................ 13

*Lebohm v. City of Galveston*,
    275 S.W.2d 951 (1955) .................................................................................... 22

*Lewis v. Cont'l Airlines, Inc.*,
    40 F. Supp. 2d 406 (S.D. Tex. 1999) ....................................................... 16, 17

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................... 2

*Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*,
    283 F.3d 282 (5th Cir. 2002) ................................................................... 16, 20

*Mahaney v. Air France*,
    474 F. Supp. 532 (S.D.N.Y. 1979) ............................................................... 13

*Mich. Cent. R.R. Co. v. Mineral Springs Mfg. Co.*,
    83 U.S. 318 (1872) ............................................................................................. 6

*MJR Corp. v. B & B Vending Co.*,
    760 S.W.2d 4 (Tex. App. 1988) ................................................................... 23

*Mo. Pac. R.R. Co. v. Larabee Flour Mills Co.*,
    211 U.S. 612 (1909) .................................................................................... 8, 10

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) ........................................................................................ 16

*Mortimer v. Delta Air Lines, Inc.*,
    302 F. Supp. 276 (N.D. Ill. 1969) ................................................. 13

*Neiman-Marcus Group, Inc. v. Dworkin*,
    919 F.2d 368 (5th Cir. 1990) .................................................... 23

*N.Y. Cent. R.R. Co. v. White*,
    243 U.S. 188 (1917) .......................................................... 22

*Ocean S.S. Co. of Savannah v. Savannah Locomotive Works & Supply Co.*,
    63 S.E. 577 (Ga. 1909) ...................................................... 7, 9

*Peninsula Airport Comm'n v. Nat'l Airlines, Inc.*,
    436 F. Supp. 850 (E.D. Va. 1977) .............................................. 23

*Pittman v. Grayson*,
    No. 93-CV-3974, 1997 WL 370331 (S.D.N.Y. July 2, 1997) ........................ 8

*Polansky v. Trans World Airlines, Inc.*,
    523 F.2d 332 (3d Cir. 1975) ................................................... 12

*PruneYard Shopping Ctr. v. Robins*,
    447 U.S. 74 (1980) (Marshall, J., concurring) ................................. 22

*Riffin v. STB*,
    733 F.3d 340 (D.C. Cir. 2013) ................................................. 8

*Roman v. Delta Air Lines, Inc.*,
    441 F. Supp. 1160 (N.D. Ill. 1977) ........................................... 13

*Semon v. Royal Indem. Co.*,
    279 F.2d 737 (5th Cir. 1960) .................................................. 6

*Shinault v. Am. Airlines, Inc.*,
    936 F.2d 796 (5th Cir. 1991) ............................................... 12, 13

*Sierra Club v. BNSF Ry. Co.*,
    No. 1:13-CV-272, 2014 WL 53309 (E.D. Wash. Jan. 2, 2014) ...................... 8

*Smith v. Piedmont Aviation, Inc. & Delta Air Lines, Inc.*,
    567 F.2d 290 (5th Cir. 1978) ................................................. 12

*Spinner v. Verbridge*,
    125 F. Supp. 2d 45 (E.D.N.Y. 2000) ........................................... 23

*Stimpson v. Plano Indep. Sch. Dist.*,
    743 S.W.2d 944 (Tex. Ct. App. 1987) ........................................................ 23

*St. Louis & Santa Fe R.R. Co. v. Oklahoma*,
    184 P. 442 (Okla. 1919) ........................................................................ 7

*Transcont'l Bus. Sys., Inc. v. C.A.B.*,
    383 F.2d 466 (5th Cir. 1967) ................................................................ 12

*Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*,
    73 F.3d 1423 (7th Cir. 1996) ........................................................... 17, 18

*Treiber & Straub, Inc. v. UPS, Inc.*,
    474 F.3d 379 (7th Cir. 2007) .................................................................. 7

*United States v. Stephen Bros. Line*,
    384 F.2d 118 (5th Cir. 1967) .................................................................. 6

*U.S. Energy Research & Dev. Admin. v. Akron, Canton, & Youngstown R.R. Co.*,
    359 I.C.C. 639 (1978), *aff'd*, 611 F.2d 1162 (6th Cir. 1979) ............................ 8

*Wainwright's Vacations, LLC v. Pan Am. Airways Corp.*,
    130 F. Supp. 2d 712 (D. Md. 2001) ...................................................... 18

*Wal-Mart Stores, Inc. v. Sturges*,
    52 S.W.3d 711 (Tex. 2011) ................................................................. 20

*Williams v. Midwest Express Airlines, Inc.*,
    315 F. Supp. 2d 975 (E.D. Wis. 2004) .................................................... 15

*Wills v Trans World Airlines, Inc.*,
    200 F. Supp. 360 (S.D. Cal. 1961) ........................................................ 15

*Woolsey v. NTSB*,
    993 F.2d 516 (5th Cir. 1993) .................................................................. 7

*York Co. v. Cent. R.R.*,
    70 U.S. (3 Wall) 107 (1865) ................................................................. 11

**RULES**

Fed. R. Civ. P. 8(a) ........................................................................... 1, 6

Fed. R. Civ. P. 12(b)(6) ......................................................................... 5

Fed. R. Civ. P. 15(a) ............................................................................ 6

Fed. R. Evid. 201(a) & (b) .................................................................................9, 10

## CONSTITUTION AND STATUTES

U.S. Const. amend. V ............................................................................................22

49 U.S.C.A. § 40101 (Westlaw through 2015) ....................................................6, 24

49 U.S.C.A. § 41310 (Westlaw through 2015) ...................................................11-15

49 U.S.C.A. § 44711 (Westlaw through 2015) .......................................................23

49 U.S.C.A. § 46108 (Westlaw through 2015) .......................................................23

## SECONDARY SOURCES

41 A.L.R. Fed. 532 (Westlaw through 2015) ...............................................11, 13, 15

8A Am. Jur. 2d Aviation § 59 ................................................................................6

13 Am. Jur. 2d Carriers § 227 ...............................................................................7

13 Am. Jur. 2d Carriers § 277 ...............................................................................8

13 Am. Jur. 2d Carriers § 289 ...............................................................................7

13 Am. Jur. 2d Carriers § 297 .............................................................................10

5A Am. Jur. Pl. & Pr. Forms Carriers § 146 ..........................................................10

2A C.J.S. Aeronautics & Aerospace § 226 ............................................................13

12 C.J.S. Carriers § 6 ............................................................................................8

FAA, Advisory Circular 120-12A ...........................................................................6

Plaintiffs Conservation Force, Dallas Safari Club, Houston Safari Club, Corey Knowlton, the CAMPFIRE Association (Zimbabwe), and the Tanzania Hunting Operators Association (together, "Plaintiffs") respectfully submit the following Response in opposition to the Motion to Dismiss for Failure to State a Claim (the "Motion") filed by Defendant Delta Air Lines, Inc. ("Delta"), and Delta's Brief in Support of its Motion ("Brief") (ECF No. 11).

## <u>INTRODUCTION</u>

Delta displays the same cavalier attitude in the Brief it did in banning transport of "Big Five" hunting trophies. On the same page, the Brief brands the Complaint (ECF No. 1) a "press release,"[1] criticizes Plaintiffs' explanation of the deleterious effects of Delta's embargo (on both Plaintiffs interests and the broader conservation system of African range nations), and seems to question Plaintiffs' standing. But the detail Plaintiffs put into explaining the substantial harms they are suffering from this embargo is specifically intended to establish standing. Plaintiffs include the millions of people who depend on revenue generated by conservation hunting as well as the safari operators who protect wildlife habitat and fund anti-poaching, and the tourist hunter-conservationists who foot the bills. *See, e.g.,* Compl. ¶¶ 1-10, 52-60. Delta's capitulation to keyboard activism and its unlawful embargo on Big Five hunting trophies has broader, damaging consequences for people, wildlife, and the conservation systems of range nations than perhaps Delta recognizes … or wants to admit. But it is Plaintiffs' obligation under Rule 8(a) of the Federal Rules of Civil Procedure to give Delta and the Court notice of what is at stake.[2]

---

[1] Delta's repeated labelling of the Complaint as a "press release" should be stricken. This term insults the millions of impoverished people living on marginal land who benefit from tourist hunting revenue, and flies in the face of information about Zimbabwe's CAMPFIRE program, as well as the benefits of safari hunting in Africa, which was provided to Delta when Plaintiffs first served a demand letter on Delta before this suit. The demand letter and attachments, explaining the deleterious effects of Delta's embargo, are annexed as Exhibit 1.

[2] While Delta may jeer at Plaintiffs' Complaint, its embargo has been recognized as a serious threat to conservation and development in Africa by more than just Plaintiffs. On December 3, 2015, the Association of Fish and Wildlife Agencies, which represents the "collective voice of North America's state, provincial, and territorial fish and

Delta's unlawful embargo harms the tourist hunter-conservationists Plaintiffs represent. They cannot ship lawfully acquired Big Five trophies in the manner allowed by international law.  Delta is treating them like traffickers and poachers, and that stigma is reducing their interest and ability to hunt in Africa.  Worse, the wildlife authorities of range nations are losing essential revenue otherwise used for anti-poaching and wildlife management.  And worst, CAMPFIRE and other rural communities are losing the benefits of hunting revenue, and suffering the consequences of reduced income and services and increased wildlife conflict – all because the embargo tarnishes the reputation of the user-pay, sustainable use-based conservation system in place.  The Complaint details these damages and thereby establishes Plaintiffs' standing.[3]

While Delta may scorn Plaintiffs' allegations and spend pages of its Brief trying to distract from this issues, at bottom, this is a simple case.  Delta is a common carrier.  As such, it is subject to a common-law duty and a statutory requirement of non-discrimination.  Yet it is unlawfully discriminating against a certain cargo from a certain shipper and a certain place, while carrying similar cargo from similar shippers and places.  Plaintiffs are and represent those discriminated against and affected by the discrimination.  They are the proper parties to litigate this claim, obtain an injunction against Delta's unlawful actions, and recover for the losses caused by Delta's tortious behavior.  The Complaint lays out a simple and effective case.  Delta cannot escape its liability by arguing around the issues.

_**First**_, the law of common carriers is ancient and clear on this point: when a common carrier holds itself out to carry "no matter what" for pretty much anyone, anywhere, it has a duty

---

wildlife agencies," sent Delta a letter asking it to rescind the embargo and identifying the same harms as Plaintiffs do.  This letter (annexed as Exhibit 2) confirms that the Complaint is more than a publicity stunt.

[3] Delta alludes to Plaintiffs' standing but does not challenge jurisdiction – for good reason.  The Complaint adequately alleges that Delta's embargo causes financial and reputational harm to Plaintiffs and their members.  The harm is fairly traceable to and redressable by an injunction against Delta's embargo.  Thus, the elements of standing are fulfilled and this Court has subject matter jurisdiction.  _E.g., Lujan v. Defenders of Wildlife_, 504 U.S. 555 (1992).

to treat potential shippers and shipments alike.[4]  Delta's embargo discriminates against specific cargo and shippers from a specific place.  It violates Delta's duty of equal treatment.  Plaintiffs may properly bring a claim under the common law to stop this unlawful conduct.

Further, the Fifth Circuit and other courts have repeatedly recognized a private right of action against air carriers for violating the aviation law's former anti-discrimination provision, § 404(b).  In 1994 when the federal aviation law was "revise[d], codif[ied], and enact[ed] without substantive change" (Pub. L. 103-272), the former § 404(b) was included as current § 41310(a).  There is no reason to believe the Fifth Circuit would change its position because the prior law was renumbered.  Thus, this Court is bound by Fifth Circuit precedent to consider Plaintiffs' claim against Delta for unreasonable discrimination against persons, places, and types of traffic.

_**Second**_, Plaintiffs' tortious interference claim, which seeks to recover damages from the defamatory effects of Delta's Big Five embargo, is not preempted by federal law.  Where, as here, a state-law claim bears only a remote relationship to an air carrier's "services," it is not preempted.  Plaintiffs allege that Delta's discrimination is broader than just its cargo-carrying services.  In announcing its refusal to transport Big Five trophies, Delta publicly lumped the Plaintiffs who hunt and seek to transport lion, leopard, elephant, Cape buffalo, and rhino with poachers and traffickers.  Delta has become the corporate poster child of anti-hunters and animal rights activists.  Delta's tortious statements damage Plaintiffs' business relations.  These statements have nothing to do with the transport of Big Five trophies.  Defamatory conduct unrelated to air carrier services is not preempted, and Plaintiffs' claim stand.

_**Third**_, Plaintiffs have properly pleaded that Delta is operating without a valid air carrier certificate.  Delta's embargo contravenes common law, federal statute, and international

---

[4] _See_ Delta Air Cargo's website, https://www.deltacargo.com/ProductsRates/General/Dimension.aspx.

convention.  Delta knows this, but continues to enforce it.  Thus, Delta knows it has violated the terms of its certificate and is operating improperly.  Plaintiffs do not need to enforce the terms of Delta's certificate – Delta's unlawful conduct speaks for itself.

Because Plaintiffs have properly alleged their claims, Delta's Motion must fail.

## **BACKGROUND**

Tourist safari hunting is a tried-and-true conservation strategy in Southern and parts of Eastern Africa.  Compl. ¶ 1.  It is responsible for protecting most wildlife habitat, providing most anti-poaching, and incentivizing tolerance and protection of wildlife by generating revenue used in remote communities for infrastructure and quality-of-life improvements.  *Id.* ¶¶ 2- 5.

Despite these benefits, some people oppose tourist hunting and prioritize the lives of individual animals over the good of the species and conservation on the whole.  *See id.* ¶ 34.  In April 2015, an animal rights group petitioned Delta to stop transporting "exotic" hunting trophies.  Delta did not stop, and issued a statement confirming it "accept[ed] hunting trophies in accordance with all U.S. domestic and international regulations."  *Id.*  However, in July 2015, a lion that apparently had a name ("Cecil") was hunted in Zimbabwe, and the Parks and Wildlife Management Authority investigated the American tourist hunter, landowner, and professional hunter involved.  *Id.* ¶¶ 38-39.  The tourist hunter was cleared of any wrongdoing, but the hunt drew unprecedented media attention and emotional social media response.  *Id.* ¶¶ 39-40.  Amidst the media storm, on August 3, 2015, Delta announced a ban on transport as freight of "lion, leopard, elephant, rhinoceros and buffalo" (the "Big Five") trophies.  *Id.* ¶ 41.  Ministers in South Africa and Namibia immediately spoke out against the ban.  *Id.* ¶ 43.  As the Complaint alleges, this embargo vilifies the actions of specific tourist hunters by refusing to transport their trophies and instead treating these lawfully acquired trophies like contraband.  *Id.* ¶¶ 6, 53, 56.

The stigma associated with and increased delay and expense caused by Delta's embargo threatens Africa's conservation hunting system by deterring big game hunters. *E.g., id.* ¶¶ 6, 7, 10, 53, 57. Accordingly, Plaintiffs – a conservation NGO, two membership safari clubs, an individual hunter whose rhino trophy Delta specifically refused to carry, the national association representing Zimbabwe's communal wildlife management areas, and the safari operators' association of Tanzania – filed their Complaint, alleging three claims. *Id.* ¶¶ 8, 10, 12-18, 62-76.

Delta now seeks to dismiss these claims – and its Motion fails, because Plaintiffs have more than adequate legal support and factual allegations to sustain the Complaint.

## ARGUMENT

I. **PLAINTIFFS SUFFICIENTLY ALLEGE CLAIMS THAT DELTA'S EMBARGO VIOLATES COMMON-LAW AND STATUTORY DUTIES OF EQUAL TREATMENT AND DELTA'S MOTION TO DISMISS SHOULD BE DENIED.**

Delta is a common carrier. As such, it cannot refuse to transport Big Five trophies (which it carried up until August 3, 2015) simply "because." Common carriers, by definition, hold themselves out to carry for the public and thereby assume a duty to carry indiscriminately, and this duty may be enforced by common-law and federal statutory claims. The Complaint adequately pleads such claims against Delta as a common carrier that is unreasonably refusing to transport cargo. Accordingly, the Motion should be denied.

### A. The Complaint's well-pleaded allegations withstand the Motion and give Delta more than sufficient notice of Plaintiffs' claims for relief.

The Plaintiffs' well-pleaded Complaint withstands Delta's Motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In analyzing Delta's Motion, the Court must accept the allegations in the Complaint as true and view them in the light most favorable to Plaintiffs. *E.g., Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 614 F. App'x 731, 736 (5th Cir. 2015) (reversing grant of motion to dismiss two counts of plaintiff's well-pleaded claims). To sustain

its burden of pleading, a plaintiff must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  A complaint must plead only a "plausible" and non-speculative claim. *Bell Atl.*, 550 U.S. at 555.  It does not need "detailed factual allegations" and may "suggest" the elements of a claim, as long as it presents "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  If the court finds a claim is not sufficiently alleged and the plaintiff seeks leave to amend to improve it, the court "should freely give leave" to amend. *See* Fed. R. Civ. P. 15(a).

### B.   The Complaint properly pleads a common-law claim that Delta's embargo on Big Five trophies violates a common carrier's duty of equal treatment.

Plaintiffs' Complaint adequately alleges that Delta is a common carrier under federal law and the common law.[5]  By definition a common carrier is "engaged in the business of carrying goods for others as a public employment," "hold[s] himself out as ready to engage in the transportation of goods for persons generally," and "undertakes to carry for all persons indifferently." *E.g., United States v. Stephen Bros. Line*, 384 F.2d 118, 122-23 (5th Cir. 1967).

The definition defines the common carrier's basic duty of nondiscrimination or equal treatment.  Once a common carrier holds itself out to serve the public, it must "serve all indifferently," to the extent of its capacity. *E.g., Semon v. Royal Indem. Co.*, 279 F.2d 737, 739 (5th Cir. 1960).  This duty arises because the common carrier fills a "public office." *E.g., Mich. Cent. R.R. Co. v. Mineral Springs Mfg. Co.*, 83 U.S. 318, 326, 329 (1872); *Gulf, Colo. & Santa Fe Ry. Co. v. Hamilton*, 57 S.W.2d 309, 312 (Tex. Ct. Civ. App. 1933) (affirming railroad's

[5] Compl. ¶¶ 46-47, 63 (citing FAA Adv. Circ. 120-12A); *see also* 49 U.S.C. § 40101(a)(2), (23), (25) (Westlaw through 2015); 8A Am. Jur. 2d Aviation § 59 ("operators catering to the public generally ... have been held to be common carriers by air and charged with liability as such").

liability for refusing to transport plaintiff's cattle).  Thus, the basic responsibility of a common

carrier is to "make no distinction in providing transportation for those who apply for it; it may

not accommodate one and arbitrarily refuse another."  13 Am. Jur. 2d Carriers § 227 (citations

omitted).  But this responsibility arises "[w]ithin the limits of its accommodations."  *Id.*  A

common carrier is permitted to define its own market – every carrier need not carry everything.

Accordingly, a carrier may define itself as a common carrier of musicians by air,[6] or

commodities by boat,[7] or only non-hazardous materials by air,[8] or only non-liquids by rail,[9] or all

kinds of parcels except Class C explosives by intermodal transport (e.g., air and other means).[10]

The cases cited by Delta (Br. at 6-8) do no more than confirm this common-law rule.[11]

Delta then omits the next sentence in the sources it cites, which establishes the

concomitant duty of a common carry of equal treatment.  Once a carrier defines its market, it

---

[6] *Woolsey v. NTSB*, 993 F.2d 516, 525 (5th Cir. 1993) (airline was common carrier because it held itself out to serve all members of the music industry: "What is crucial is that the common carrier defines itself through its own marketing efforts as being willing to carry any member of that segment of the public which it serves.") (Br. at 5).

[7] *Ocean S.S. Co. of Savannah v. Savannah Locomotive Works & Supply Co.*, 63 S.E. 577, 577-79 (Ga. 1909) (cited in 13 Am. Jur. 2d Carriers § 289, which is cited in Br. at 6).

[8] *St. Louis & Santa Fe Ry. Co. v. Oklahoma*, 184 P. 442 (Okla. 1919). (cited in 13 Am. Jur. 2d Carriers § 289, which is cited in Br. at 6).

[9] *Delta Air Lines, Inc. v. C.A.B.*, 543 F.2d 247 (D.C. Cir. 1976) (Br. at 7).

[10] *B.J. Alan Co. v. ICC*, 897 F.2d 561, 565 (D.C. Cir. 1990) (Br. at 6).

[11] *Accord Adkins v. Slater*, 298 S.E.2d 236 (W.Va. 1982) (Br. at 7) ("At common law a man ... was a common carrier of such kinds of property as he publicly undertook as a business to convey for all persons indifferently for hire ... a taxicab owner who transports passengers and baggage for the public generally, is a common carrier with respect to the safety of baggage transported ... as is an express company with respect to property intrusted to it for shipment...") (citations omitted).  The court held the issue of whether defendant was a common carrier to be a question of fact.

Delta cites two more distinguishable cases (Br. at 7-8).  In *Kansas State Bank & Trust v. Emery*, the shipper sued to recover for treasury receipts stolen in transit.  The court upheld defendant air freight company's policy on "Shipments Not Available," which included "negotiable securities."  656 F. Supp. 200, 205 (D. Kan. 1987).  But the court never discussed the common carrier's duty; it is not even clear in the opinion if defendant **_was_** a common carrier.  And in *Treiber & Straub, Inc. v. UPS, Inc.*, the court upheld defendant's exclusion for goods of great value.  474 F.3d 379, 386 (7th Cir. 2007).  That holding is consistent with the common-law rule that "a common carrier is bound to convey the goods of any person offering to pay his hire unless ... the risk sought to be imposed upon him [is] extraordinary."  *Ocean S.S.*, 63 S.E. at 578.  A common carrier is not forced to take on "extraordinary" risk, but Delta never argues Big Five trophies present anything of the kind.  They don't – they are not extraordinary items but carried like normal cargo, in normal crates – the sort of cargo Delta holds itself out to carry.

may not show "favoritism" among shippers or shipments based on the type of cargo (*Sierra Club v. BNSF Ry. Co.*, No. 1:13-CV-272, 2014 WL 53309, *1 (E.D. Wash. Jan. 2, 2014)), identity of the shipper (*ICC v. Del., Lackawanna, & W. R.R. Co.*, 220 U.S. 235, 252-53 (1911)), or "other circumstances irrelevant to the carrier service rendered."[12]  13 Am. Jur. 2d Carriers § 277.  If an air carrier holds itself out to carry people in general, it may not turn them away.[13]

For example, the Supreme Court held a railroad could be compelled to transport flour from the plaintiff's mill as it was doing for other industries, even though the railroad had a dispute with the plaintiff and had stopped carrying the plaintiff's flour.  Because the railroad was a common carrier, it was obligated to provide "equal service to all."  *Mo. Pac. R.R. Co. v. Larabee Flour Mills Co.*, 211 U.S. 612, 619-20 (1909).  In the same vein, the Court upheld an Interstate Commerce Commission ("ICC") rule that forced railroads to carry trailers for their competitor motor carriers at the going public rate.  *Am. Trucking Ass'ns, Inc. v. Atchison*, 387 U.S. 397, 400-01 (1967).  The Court overturned a three-judge district court ruling which had overturned the ICC rule.  *Id.* at 413.  The Court stated that a common carrier's duty of equal treatment at common law (later codified) is ancient and "comprehensive," and "exceptions are

---

[12] In *Sierra Club*, the court noted that a railway cannot refuse to transport items including the coal to which plaintiffs objected.  2014 WL 53309 at *1; *see also Chlorine Inst., Inc. v. SOO Line R.R.*, 792 F.3d 903, 910 (8th Cir. 2015); *U.S. Energy Research & Dev. Admin. v. Akron, Canton, & Youngstown R.R. Co.*, 359 I.C.C. 639 (1978), *aff'd*, 611 F.2d 1162 (6th Cir. 1979); *see also Riffin v. STB*, 733 F.3d 340, 345 (D.C. Cir. 2013).  Delta cites a half-sentence from *Riffin* (Br. at 7).  The full quote confirms the common-law duties of common carriers were broad and, "'even at common law, railroad companies, 'whose property and facilities are affected with a public interest, [were] ordinarily held to be common carriers of goods delivered to them for transportation.'"  733 F.3d at 345-56 (citing *Akron, Canton, & Youngstown R.R. Co. v. ICC*, 611 F.2d 1162 (6th Cir. 1979) & 12 C.J.S. Carriers § 6).  *Riffin* upheld the ICC's denial of an application to run a railroad because the applicant tried to carve out hazardous materials from its scope of services, which did not satisfy the common carrier's obligation.  *Id.* at 347-48.

[13] An air carrier that holds itself out to carry all must carry all, unless otherwise authorized by federal aviation law.  In *Pittman v. Grayson*, for example, the court reversed a finding against IcelandAir for its part in letting a divorced mother abscond with two children, as the airline "d[id] not, however, have an unfettered right to decide who should or should not travel," because an "airline [is] a common carrier and, 'as a general rule, a common carrier of passengers is bound to receive for carriage, without discrimination all proper persons who desire and properly offer to become passengers.'"  No. 93-CV-3974, 1997 WL 370331, *2 (S.D.N.Y. July 2, 1997).

not to be implied.  *Id.* at 407.  Nothing in statute or common law allowed railroads to choose what they shipped based on nothing more than the shipper's identity – even if the shipper was a competitor.  Therefore, the ICC rule was upheld.  *Id.*

Similarly, a steamship was forced to carry lumber because it held itself out to carry all commodities, even though it preferred to carry cotton.  In *Ocean Steamship*, plaintiff challenged defendant's policy of "booking" cotton for passage on its ship, but not allowing shippers of lumber to "book" their transport, which effectively meant that cotton had priority in the sailing. 63 S.E. at 579-80.  Defendant claimed it could prefer cotton to lumber as long as it treated all shippers of cotton alike and all shippers of lumber alike.  *Id.*  Defendant offered many reasons why it preferred to carry cotton, including that cotton was "the staple crop of Georgia," thus suggesting that defendant was doing its duty by preferencing this commodity.  *Id.* at 580.  But because the ship held itself out as a common carrier of freight, the court held it could not preference cotton to lumber and must accept the lumber if tendered first.  *Id.*

Delta's assertion and the cases it cites providing that a common carrier may carve out its market does not actually matter here, as Delta has **_not_** carved out any particular market.  It holds itself out as a common carrier that offers 15,000 flights per day to 334 destinations in 64 countries to anyone who pays the fare and books by phone, ticket counter, or website.  Compl. ¶ 47.  And its cargo website suggests an **_un_**limited scope of service: "No matter what you're shipping – or where you're shipping it to – we have a variety of services that can help ensure proper handling and a safe delivery."  Delta Air Cargo Website, https://www.deltacargo.com/ ProductsRates/General/Dimension.aspx.[14]  As in *Ocean Steamship*, since Delta holds itself out to

---

[14] A federal court may refer to a "matter[] of public record" in deciding a Rule 12(b)(6) motion as long as it "does not rely on those matters when deciding the motion."  *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995).  And a federal court may take judicial notice of an "adjudicative fact" if it is "not subject to reasonable dispute in that it is ... (2) capable of accurate and read determination by resort to resources whose accuracy cannot be questioned."  Fed.

carry nearly everything, Delta cannot preference cargo it prefers to carry, even if less "controversial," to the detriment of lawful hunting trophies.  It carries all other trophies from Africa, Europe, and within the U.S.

Furthermore, Delta's conduct to-date undermines its claims that it has carved hunting trophies out of its market.  ***Delta has not stopped carrying hunting trophies.***  It has continued to carry trophies, including plains game from Africa.  It carries trophies from other places.  It carries all hunting trophies but the Big Five.[15]  Delta asserts that it is employing "an evenhanded, non-discriminatory policy under which the carrier refuses to accept a certain type of cargo from any would-be shipper … This is not a case where Delta is carrying trophy kills for some shippers but not for Plaintiffs."  Br. at 8.  That is simply untrue.  Plaintiffs aren't asking Delta do to something it hasn't already been doing.  Plaintiffs are simply asking that Delta treat Big Five trophies the way it treats other hunting trophies and other commodities.  They are simply asking that Delta comply with its common-law duty of equal treatment and non-discrimination.

A common carrier's duty to transport indiscriminately can be enforced through mandamus or other remedy.  *Mo. Pac. R.R.*, 211 U.S. at 619-20.  A shipper whose cargo is refused by a common carrier can also seek damages.  13 Am. Jur. 2d Carriers § 297.  The claim is simple: common carriers have a duty to carry "all goods offered for transportation.  Refusal to carry the goods of some shippers [i]s unlawful." *Am. Trucking Ass'ns*, 387 U.S. at 406; 5A Am. Jur. Pl. & Pr. Forms Carriers § 146 (form for "Petition for writ of mandamus/refusal to receive and transport freight").  Delta's Brief cites the Supreme Court's opinion in *York*, which neatly

R. Evid. 201(a) & (b).  The Court should be able to take judicial notice of Delta's own website, as referenced in the Complaint.  *Gemstar Group USA, Inc. v. Ferragamo USA, Inc.*, No. 08-CV-1822, 2008 WL 4858363, *7 (S.D. Tex. Nov. 10, 2008) (taking judicial notice of defendant's "multinational website that provides information about Defendant's company, products, museum, employment, and news").

[15] Delta certainly cannot save its claims by just refusing to carry all trophies.  Hunting trophies do not fall under the allowed exclusion of extraordinary, high-liability items or dangerous goods.

sums up the common carrier's right to define its market, its obligation once it does, and the shipper's right to bring an action:

> The law prescribes the duties and responsibilities of the common carrier. He exercises, in one sense, a public employment, and has duties to the public to perform. Though he may limit his services to the carriage of particular kinds of goods, and may prescribe regulations to protect himself against imposition and fraud, and fix a rate of charges proportionate to the magnitude of the risks he may have to encounter, he can make no discrimination between persons, or vary his charges from their condition or character. He is bound to accept all goods offered within the course of his employment, and is liable to an action in case of refusal.

*York Co. v. Cent. R.R.*, 70 U.S. (3 Wall.) 107, 112 (1865).

Here, the Complaint adequately pleads that Delta is a common carrier (*see, e.g.,* ¶¶ 46-47), holds itself out to everyone and not as limited to particular goods (*see, e.g.,* ¶¶ 19, 34, 45, 47, 49, 64), and violates its duty of equal treatment by refusing to ship one type of trophy (*see, e.g.,* ¶¶ 8, 10, 11, 41, 48, 51, 52), by one type of shipper (e.g., the Big Five) (*see, e.g.,* ¶¶ 16, 17, 49, 53, 57). The Complaint alleges Delta refuses to ship goods it otherwise offers to ship, and is liable therefor. These allegations satisfy the pleading requirement for a common-law violation of a common-carrier's duty. Nothing in Delta's Brief can help it escape its ultimate liability as a recognized, common-law common carrier, and its Motion should be denied.

### C. The Complaint properly pleads that Delta's embargo on Big Five trophies violates the statute codifying the common carrier's duty of equal treatment.

Delta's embargo on only Big Five trophies also violates its statutory duty of non-discrimination. Section 41310(a) of the federal aviation law provides: "An air carrier or foreign air carrier may not subject a person, place, port, or type of traffic in foreign air transportation to unreasonable discrimination." 49 U.S.C.A. § 41310(a) (Westlaw through 2015). This provision was adapted from § 404(b) of the Federal Aviation Act of 1958. 41 A.L.R. Fed. 532 (Westlaw through 2015). This provision "provide[s] in general terms, that airline traffic, both passenger

and cargo traffic, is to be treated equally by the air carriers … to protect the traveling public … [and] effectuate the 'rule of equality' in the air transportation industry." *Transcont'l Bus. Sys., Inc. v. C.A.B.*, 383 F.2d 466, 474-75 (5th Cir. 1967).[16]  This section is intended "to protect the right of access to air facilities from discriminatory interference by the air carrier."  *Polansky v. Trans World Airlines, Inc.*, 523 F.2d 332, 336 (3d Cir. 1975) (no private right under circumstances of that case because plaintiffs suffered only "inferior accommodation," not "discriminatory denial of access to air facilities").

Federal courts have consistently recognized a private right of action to enforce violations of this anti-discrimination provision.  The Fifth Circuit acknowledged a private of right of action under § 404(b) at least three times.  First, in *Smith v. Piedmont Aviation, Inc. & Delta Air Lines, Inc.*, the Fifth Circuit affirmed a damages award for a violation of § 404(b), the predecessor of § 41310(a).  567 F.2d 290, 291 (5th Cir. 1978).  The plaintiff alleged that defendants failed to follow their boarding priority rules and unreasonably preferenced other passengers to his detriment, and the district court and Fifth Circuit found this preference offended the principle of equal treatment.  *Id.*  In *Diefenthal v. C.A.B.*, the court confirmed its recognition of a private right of action under the anti-discrimination provision.  681 F.2d 1039, 1050-51 (5th Cir. 1982).  The court found this provision prohibits "denial of access to air facilities," but held that passengers who were allowed to board their flight and only prohibited from smoking on the plane did not state a claim for denial of access.  *Id.* at 1051.  And in *Shinault v. American Airlines, Inc.*, the court recognized a private right of action under a different provision of the federal aviation law

---

[16] In *Transcontinental*, the Fifth Circuit found the C.A.B.'s rationale did not support its ruling and the Board had impermissibly used "the status of the traffic" – i.e., customers' sages – as the basis for a differential fare for youth 12-22, in an unfairly preferential manner that violated federal law.  383 F.2d at 490-91.

(prohibiting discrimination on the basis of disability), while again acknowledging the existence of a private right under the predecessor to § 41310(a). 936 F.2d 796, 800-02 (5th Cir. 1991).[17]

Numerous other courts[18] and commentators[19] also found a private right of action under § 404(b), and more recent opinions have extended this holding to § 41310(a). *See DeGirolamo v. Alitalia-Linee Aeree Italiane, S.P.A.*, 159 F. Supp. 2d 764, 767 (D.N.J. 2001). Case law addressing a private right under § 41310(a) is limited, but the fact the Fifth Circuit has implied private causes of action in the federal aviation law on numerous prior occasions suggests it would recognize a private right under the successor to § 404(b).

A claim for unreasonable discrimination stands when it is "alleged and proven that the plaintiff's right to fair, equal and nondiscriminatory treatment has been violated." *Mahaney v. Air France*, 474 F. Supp. 532, 535 (S.D.N.Y. 1979) (finding plaintiff stated claim under § 404(b) for discriminatory treatment). Once the plaintiff proves discrimination or preference, the burden shifts to the defendant airline to prove (if it can) how the discrimination was "reasonable." *Archibald*, 460 F.2d at 17. Here, the Complaint alleges Plaintiffs have a right to equal treatment

---

[17] The Fifth Circuit vacated a grant of sanctions and held a district court's ruling that no private right of action existed under the disability provision was "directly contrary to Fifth Circuit precedent." *Bynum v. Am. Airlines, Inc.*, 166 F. App'x 730, 733 (5th Cir. 2006) (per curiam). *Bynum* indicates the Fifth Circuit's continued fidelity to private rights of action for non-discrimination under the federal aviation law.

[18] *E.g., Fitzgerald v. Pan Am. World Airways, Inc.*, 229 F.2d 499 (2d Cir. 1956) (finding private right to recover for racial discrimination); *Archibald v. Pan Am. World Airways, Inc.*, 460 F.2d 14, 16-17 (9th Cir. 1972) (reversing district court ruling, holding passengers stated claim for unjust discrimination under § 404(b)); *Karp v. N. Cent. Air Lines, Inc.*, 583 F.2d 364, 366 (7th Cir. 1978) (affirming award of damages for violation of anti-discrimination provision); *Roman v. Delta Air Lines, Inc.*, 441 F. Supp. 1160, 1165 (N.D. Ill. 1977) (stating "[i]t is well-settled that a private damage action is available to remedy violations of § 404(b)"); *Mortimer v. Delta Air Lines, Inc.*, 302 F. Supp. 276 (N.D. Ill. 1969) (finding private right existed due to public interest in ensuring non-discriminatory treatment by air carriers); 2A C.J.S. Aeronautics and Aerospace § 226 ("An air carrier or foreign air carrier may not subject a person, place, port, or type of traffic in foreign air transportation to unreasonable discrimination … This statute creates a private cause of action for passengers who suffer unjust discrimination or unreasonable prejudice.").

[19] *See* 41 A.L.R. Fed. 532 ("The federal courts are in agreement that while the Federal Aviation Act does not provide a private remedy for violation by an air carrier of the discrimination provisions contained in § 404(b) of the Act…, a private civil action may in an appropriate case be implied. Where the injury caused by the carrier's conduct appears to fall within the scope of the Act's purpose to provide adequate air transportation without unreasonable preferences or unjust discrimination, the courts hold the case appropriate for a private remedy…. The discrimination provision … 'is for the benefit of persons, including passengers, using the facilities of air carriers...'") (internal citations omitted).

(*see, e.g.,* ¶ 46-48); Delta shipped Big Five trophies from Africa up until August 3 and even refused to bow to a prior petition to stop shipping trophies (*see, e.g.,* ¶ 34); and Delta has stopped shipping such trophies (*see, e.g.,* ¶¶ 6, 11, 41, 52), even though it continues to ship other trophies (*see, e.g.,* ¶¶ 6, 41, 52, 54).  The Complaint also alleges the unreasonableness of Delta's decision to embargo Big Five trophies, alleging that the decision which was based on nothing more than a knee-jerk reaction to "Cecil-mania" (*see, e.g.,* ¶§ 41, 44, 56).[20]  Those allegations satisfy the elements of the claim, and set forth plausible facts to show a violation of § 41310(a).  Delta's embargo is aimed at a particular person, place, and type of traffic, and it is unreasonable and based on nothing more than overreaction to Internet outrage.

Delta's Brief goes into an extensive analysis of the private right of action under § 41310(a) and seems to ask the Court to overrule the Fifth Circuit.  Obviously, a district court does not have this authority.  *Jimenez v. Wood Cnty.*, 660 F.3d 841, 849 (5th Cir. 2011) (Smith, J., dissenting) ("a district court does not have authority to overrule our [Fifth Circuit] precedents…").  Delta distinguishes the Fifth Circuit's opinion in *Diefenthal* by citing to district court cases from other jurisdictions, but all are unpersuasive.  None of them actually analyze whether § 41310 affords a private right of action.  In *Arif Naqvi* for instance, the court mainly discussed preemption under the Montreal Convention and only referenced § 41310 in a footnote where it relied on all but one case construing a separate section of the federal aviation law (§ 40127).  *Arif Naqvi v. Turkish Airlines, Inc.*, 80 F. Supp. 3d 234, 239 n.7 (D.D.C. 2015).  The only § 41310 case cited by the court was *Gibbs*, which did not analyze a private right under § 41310 because the plaintiff

---

[20] Delta does not argue its embargo is reasonable.  It couldn't.  The embargo violates the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES"), which authorizes import and export of the Big Five (and other wildlife) after a non-detriment finding is made.  Compl. ¶¶ 24-29.  The CITES Parties specifically authorized import and export of hunting trophies of leopard, elephant, and rhino.  *See id.* ¶ 26.  The embargo is also contrary to U.S. Fish and Wildlife Service policy, which only allows import of Big Five trophies (except for Cape buffalo, which are not listed under U.S. law or CITES) after making an "enhancement of survival" finding.  The embargo blocks that enhancement and thus threatens survival of the Big Five.

conceded that claim among others.  *Gibbs v. Am. Airlines, Inc.*, 191 F. Supp. 2d 144, 146 (D.D.C. 2002)).  In *Elnajjar*, plaintiffs did not defend any statutory claims against a motion to dismiss.  *Elnajjar v. Nw. Airlines, Inc.*, No. 4:04-CV-680, 2005 WL 1949545, *6 (S.D. Tex. Aug. 15, 2005).  And in *Williams*, the court refused to allow defendants to remove plaintiff's state claims pursuant to § 41310.  The court wrote that § 41310 "provides no cause of action," but cited nothing and did not engage in a private-right analysis.  *Williams v. Midwest Express Airlines, Inc.*, 315 F. Supp. 2d 975, 979 (E.D. Wis. 2004).  None of these cases distinguishes § 41310(a)'s prior history under § 404(b) or the Fifth Circuit's controlling decisions.

Delta also argues that the federal aviation law provides private plaintiffs with the right to initiate an administrative investigation, and this supports the conclusion there is no private right under § 41310(a).  Br. at 19-21.  But cases construing the predecessor to § 41310(a) held the opposite for the reason that these regulatory remedies ***only*** afforded an injured party with prospective relief and did not allow for compensatory damages for a past wrong, courts inferred a private right.  41 A.L.R. Fed. 532 (citing *Wills v Trans World Airlines, Inc.*, 200 F. Supp. 360 (S.D. Cal. 1961).  Essentially, it was considered in keeping with the purposes of the federal aviation law to make whole an injured plaintiff who suffered discrimination.  *Wills*, 200 F. Supp. at 364-65 ("Without judicial intervention to redress past violations of the statute, the rights or air passengers, as declared in the Act, to travel without undue preference or unjust discrimination would be robbed of vitality and the purposes of the Act substantially thwarted").

Accordingly, both Fifth Circuit law and the policy underlying the finding of a private right to effectuate the anti-discrimination goals of § 41310(a) undercut Delta's argument.  This Court is not being asked to construe some new statutory provision, but rather one which has a long history of private enforcement.  A brand-new private right analysis is unnecessary.  This

Court should reject the arguments in Delta's Brief and follow the Fifth Circuit's lead in *Smith*, *Diefenthal*, and *Shinault*.[21]

## II. PLAINTIFFS' TORTIOUS INTERFERENCE CLAIM IS NOT PREEMPTED AND PROPERLY PLEADS A CLAIM FOR WHICH RELIEF CAN BE GRANTED BASED ON DELTA'S DEFAMATORY STATEMENTS AND ACTIONS.

Plaintiff's tortious interference claim does not relate to Delta's services, and thus does not fall under the Airline Deregulation Act of 1978's ("ADA") preemption clause. This claim is sufficiently pleaded to survive a motion to dismiss. Plaintiffs may recover damages from Delta's defamatory conduct, which has harmed their business interests – as well as conservation funding for African range nations, upon which Plaintiffs' interests and businesses depend.

Preemption under the ADA is not automatic. *Hodges v. Delta Air Lines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (en banc). Only state-law claims "relating to" an air carrier's "prices, routes, or services" are preempted, and the analysis must be conducted according to the specific facts of each claim. *E.g., id.; Lewis v. Cont'l Airlines, Inc.*, 40 F. Supp. 2d 406, 411 (S.D. Tex. 1999); *Bayne v. Adventure Tours USA, Inc.*, 841 F. Supp. 206, 208 (N.D. Tex. 1994). Claims having "too tenuous, remote, or peripheral" a connection to prices, routes, or services are not preempted. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 390 (1992); *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 287 (5th Cir. 2002). This is because the ADA did not seek to "displace all state tort law," but only to prevent states from establishing their economic regulation of air carriers, contrary to Congress' goal of allowing competition to the drive development of that market. *Hodges*, 44 F.3d at 335, 337.[22]

---

[21] The Fifth Circuit affirmed in *Bynum* (which post-dates the Supreme Court's opinion in *Sandoval*, cited by Delta at 15-21), that *Shinault* is still binding law. 166 F. App'x at 733. Delta also cites *Casas v. American Airlines, Inc.*, 304 F.3d 517, 522 n.7 (5th Cir. 2002) (Br. at 15, 19, 22), but *Casas* was construing a private right under different provisions relating to a carrier's liability for lost baggage. Baggage claims are typically limited by an air carrier's contract of carriage or other authority, which reinforces why a private right of action is not needed for those claims.

[22] Preemption is improper here as well because Plaintiffs' tortious interference claim is not an economic regulation. Delta's defamatory statements and acts do not make Delta a more competitive and efficient airline, and that is what

An air carrier's "services" "generally represent a bargained-for or anticipated provision of labor from one party to another.... such items as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself..." *Id.* at 336. State-law claims "premised on unreasonable conduct that is unnecessary to the provision of a service are not preempted under the ADA … because the conduct too tenuously relates or is unnecessary to an airline's services.'" *Lewis*, 40 F. Supp. 2d at 412 (citations omitted).  In essence, where the facts of a claim do not take place in the course of traveling on a plane but rather involve an airline's on-the-ground tortious behavior against a plaintiff, courts are less likely to preempt.[23]  This is especially true when a claim is based on defamatory conduct.  State-law prohibitions on defamatory conduct and resulting interference with business relations are not preempted because they do not represent an economic regulation.  These claims do not affect an airline like Delta's ability to fly its planes, but only limit an airline like Delta's ability to slur the good names of those with whom they do business.  The ADA's preemption provision does not give air carriers carte blanche to defame and interfere with potential passengers' business well beyond any rate, route, or flight.

For example, the Seventh Circuit held state-law claims including tortious interference based on an airline's on-the-ground statements criticizing a travel agency were too tenuously related to the airline's services to be preempted.  *Travel All Over the World, Inc. v. Kingdom of*

---

the ADA's preemption clause seeks to protect.  *See Cont'l Airlines, Inc. v. Kiefer*, 920 S.W.2d 274, 278-79 (Tex. 1996) (citations omitted).  Tortious interference also falls outside the preemption clause because it comes from the common law and is not an "instance[] of a state 'imposing [its] own substantive standards with respect to rates routes, or services,' which the ADA preemption provision plainly preempts."  *Hodges*, 44 at 340-41 (Jolly, J., concurring); *see also Cont'l Airlines*, 920 S.W.2d at 282-83.

[23] *E.g., Brown v. United Airlines, Inc.*, 656 F. Supp. 2d 244, 249 (D. Mass. 2009) (claim challenging existence or amount of fee for curbside baggage check-in would be preempted under ADA as related to airline's prices, but finding plaintiffs' claim was not preempted because it only challenged "intentionally-misleading fee that deceives customers into believing they are paying a tip or gratuity to the skycaps … [and] the deceptive manner in which the fee [wa]s charged," and not fee itself).

*Saudi Arabia*, 73 F.3d 1423, 1433-34 (7th Cir. 1996).  The agency had booked a number of

flights, but the airline canceled those reservations.  *Id.* at 1428.  At the same time, it told the

agency's customers the agency's service was poor.  *Id.*  The Seventh Circuit reasoned that

statements about the travel agency's services could not relate to the ***airline's*** services – they did

not relate to the airline at all.  *Id.* at 1433.  Accordingly, the Seventh Circuit reversed the district

court's dismissal to the extent the agency's claims were based on the airline's criticisms.  *Id.*

      Similarly, a tour operator's state-law claim was not preempted to the extent based on a

pilot's statements, while on the ground, about the operator's financial condition.  *Wainwright's*

*Vacations, LLC v. Pan Am. Airways Corp.*, 130 F. Supp. 2d 712, 714-15 (D. Md. 2001).  The

operator contracted with defendant air carrier to provide regular flights to Las Vegas.  *Id.* at 714.

On the first trip, the flight was delayed in part because defendant failed to provide fuel.  *Id.*  In an

announcement over the plane's loudspeaker, the pilot blamed the delay on the tour operator,

which ultimately resulted in a loss of business.  *Id.* at 715-16.  The operator's state-law claim

was not preempted, as the pilot's statements did not relate to safety or boarding procedures or

any duty of the airline.  *Id.* at 724.  Accord *Bayne*, 841 F. Supp. at 207-09 (slander and other

state-law claims not preempted where accusations were made about plaintiff after he disembarked

a flight, resulting in his detention, as statements related to plaintiff and not airline's services);

*Desardouin v. UPS, Inc.*, 285 F. Supp. 2d 153, 165 (D. Conn. 2003) (denying motion to dismiss

state-law claims as preempted when based on statements made by carrier's deliveryman in front

of plaintiff's customers that falsely asserted plaintiff had not paid for goods and questioned if

plaintiff could pay, as statements related to plaintiff and not services provided by defendant).

      Here, Plaintiffs' tortious interference claim does not challenge Delta's services (or refusal

to provide services).  Rather, it challenges the deceptive and defamatory effect of Delta's embargo

and its negative impact on Plaintiffs' business relations.  Plaintiffs essentially challenge the

implication that Big Five hunters act unlawfully, which was broadcast by Delta's very public

embargo and has damaged Plaintiffs' business relations past, present, and future.  The Complaint

alleges "Delta initially refused to be bullied by an Internet petition" to cease carrying trophies

and instead issued a statement "confirming it 'accept[ed] hunting trophies in accordance with all

U.S. domestic and international regulations.'"  Compl. ¶ 34.  Delta at first affirmed lawful,

regulating hunting.  But then a U.S. hunter was (unfairly) accused of poaching a lion in Zimbabwe

and "Cecil-mania" took over.  *Id.* ¶¶ 38-41.  Delta very publicly caved to media outrage about the

hunt of "Cecil."  *Id.* ¶¶ 40-41, 44-45.  In effect, Delta's about-face and public statement that it

would ban Big Five trophies, and that "[p]rior to this ban, [its] strict acceptance policy called for

absolute compliance with all government regulations regarding protected species," suggested Big

Five hunting did not comply with those regulations.  Delta's acts and statements lumped lawful

Big Five trophies with unlawful contraband Delta will not transport.  Delta has become a "poster

child" for anti-hunters, and its announcement has sparked embargos by airlines and now hotels.[24]

Delta's reversal, and the stigma it puts on Big Five hunters, is defamatory and recklessly

or willfully misleading.  Trophy hunting and transport of Big Five trophies was, and is, legal

under national and international law, and is recognized for its benefits under both national and

international law.  Compl. ¶¶ 24-30.  Delta's August 3, 2015 statement suggests the contrary.  Yet

Delta had already confirmed it knew carriage of trophies was lawful, suggesting a desire to deceive

(at worst), to confuse (at best), and in either event, knowledge the announcement would cut back

---

[24] *See, e.g.,* Chris Green, "VICTORY!  Delta takes a stand against trophy hunting!"  Change.org, available at
https://www.change.org/p/delta-air-lines-end-the-transport-of-exotic-animal-hunting-trophies/u/11615784; William
Cummings, *Airlines ban hunters' big-game 'trophies' after uproar over Cecil the lion*, USA Today (Aug. 4, 2015).
A recent petition to prevent a hunting expo in Florida cites Delta's embargo as grounds for the hotel to cancel the
event.  CompassionWorks International, Petition, available at https://www.change.org/p/hilton-worldwide-
doubletree-by-hilton-orlando-do-not-support-trophy-hunting.

business in respect of Big Five trophies. *E.g., id.* ¶¶ 34, 41.  Delta's actions and statements have deterred U.S. hunters from engaging in commerce and business relations that economically sustain range states, communities, safari operators and related service industries, habitat, and wildlife. *Id.* ¶¶ 9, 53.  Tortious interference in Texas requires: a likelihood of a business relation which is knowingly obstructed by defendant's "independently tortious or wrongful" conduct, and damages.  *See, e.g., Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2011); *Amazon Tours, Inc. v. Quest Global Angling Adventures, LLC*, No. 3:03-CV-2551, 2004 WL 1788078, *4 (N.D. Tex. June 30, 2004) (Lynn, J.).  Taking their allegations as true as required under Rule 12(b)(6), Plaintiffs have adequately pleaded these elements and stated a claim for tortious interference unrelated to any of Delta's services.  Compl. ¶¶ 2, 6, 9, 31-32, 34, 41, 53-57, 68-72.

Delta's reliance on *Lyn-Lea* is misplaced.[25]  *Lyn-Lea* does not categorically preempt all business torts.  Rather, it involved a specific fact pattern central to the airline industry: a dispute between a travel agent and a carrier over the computer system the agent used to book tickets on the carrier.  283 F.3d at 285.  This dispute was clearly related to the airline's prices and services because the parties' very relationship was based on selling and providing flights.  *See id.*  While the court never addressed the merits of plaintiff's tortious interference claim, the overlap in the agent's and the airline's customers (i.e., the agent booked passengers for travel on the airline) suggests a direct relationship to prices and services.  Here, on the other hand, Plaintiffs' business relations are broader than Delta's customers, and the damages is not the failure to carry but rather the impact of the public announcement of the trophy embargo on Plaintiffs' businesses.  Compl. ¶¶ 6, 9, 34, 41, 53, 56, 65.  *Lyn-Lea Travel* does not speak to or control these facts.

---

[25] Delta asserts "[f]ederal courts routinely dismiss tortious-interference claims on preemption grounds...."  Br. at 10.  But these claims were not preempted because they pleaded "tortious interference."  The key is they related to prices, routes, and services.  The title of the tort has nothing to do with preemption.  As explained above, Plaintiffs' tortious interference claim does not relate to Delta's services.

Similarly, Plaintiffs' claims do not undermine the intent of the ADA's preemption clause. Plaintiffs do not seek to use Texas tort law to economically regulate Delta. They do not seek an injunction against Delta based on Texas law. (The requested injunction should be issued under the common law.) Plaintiffs use Texas law only to recover the damage suffered from Delta's embargo as a result of being publicly lumped with traffickers and poachers. *E.g.,* Compl. ¶¶ 6, 53. As explained above, Delta is not free to reject cargo it has the capacity to carry, or to unjustly discriminate against specific persons, places, and types of traffic. Similarly, under Texas law, Delta is not free to publicly treat lawful tourist hunters like traffickers and poachers, and slight the conservation funding system of countries like Tanzania and Zimbabwe.

Finally, Delta repeatedly suggests Plaintiffs are trying to "force" Delta to do something it doesn't do and transport hunting trophies. *E.g.,* Br. at 8, 12. But Plaintiffs don't have to "force" Delta to provide cargo service for trophies. ***It does now.*** Delta's recent embargo on hunting trophies only applies to the Big Five. Since August 3, 2015, Delta has continued to carry hunting trophies except for the Big Five, including plains game and those from places outside Africa. Delta carried Big Five trophies until August 3, so Plaintiffs are not "forcing" anything unusual or outside Delta's capacity. Delta's refusal to carry Big Five trophies now, post-Cecil, insults Plaintiffs' vital interests. Plaintiffs can bring a state-law claim against Delta to recover for that insult, which damages their business interests and international conservation programs.

Finally, Plaintiffs' tortious interference claim is not preempted because application of the ADA's preemption clause here is unconstitutional. If applied as Delta demands, the preemption clause deprives Plaintiffs of their rights to a tort cause of action without providing a reasonable, substantial alternative remedy. Delta points out that the federal aviation law allows an administrative investigation and hearing and regulatory fines and orders by the Department of

Transportation and FAA.  Br. at 19-20.  These administrative remedies do not make Plaintiffs whole for the losses they suffered and continue to suffer from Delta's unlawful embargo.  To apply the ADA's preemption provision would be an unlawful taking of Plaintiffs' tort claim and would violate Due Process.  U.S. Const. amend. V.  It would unconscionably deprive Plaintiffs of any private recovery, without providing a "reasonably just" and "substantial and efficient" substitute.  *See, e.g., N.Y. Cent. R.R. Co. v. White*, 243 U.S. 188, 201 (1917) (upholding workers' compensation statute as it substituted system of recovery for claims); *Hardware Dealers' Mut. Fire Ins. Co. of Wis. v. Glidden Co.*, 284 U.S. 151, 159-60 (1931) (upholding arbitration on "single issue" of loss under fire insurance policy as "substantial and efficient"); *see also Hodges*, 344 F.3d at 337-38 (Congress did not indicate intent to "displace" all state tort law, especially "in light of its failure to provide any federal remedy for persons injured" by tortious or illegal conduct).[26]  As the Fifth Circuit noted, "it is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct." *Hodges*, 44 F.3d at 337-38.  Congress could not, as any such removal would be unconstitutional.

## III. THE COMPLAINT PLEADS A PROPER CLAIM FOR RELIEF FOR DELTA'S FAILURE TO OPERATE WITH A VALID CERTIFICATE.

Plaintiffs allege Delta has violated the conditions of its air carrier certificate by adopting a policy that disregards national and international law, and that Delta's certificate is invalid

---

[26] *See also Lebohm v. City of Galveston*, 275 S.W.2d 951, 955 (Tex. 1955) ("legislative action withdrawing common-law remedies for well established common-law causes of action for injuries to one's 'lands, goods, person or reputation' is sustained only when it is reasonable in substituting other remedies..."); *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 93-94 (1980) (Marshall, J., concurring) ("Quite serious constitutional questions might be raised if a legislature attempted to abolish certain categories of common-law rights in some general way.  Indeed, our cases demonstrate that there are limits on governmental authority to abolish 'core' common-law rights ... at least without ... a provision for a reasonable alternative remedy."); *Baptist Hosp. of Se. Tex., Inc. v. Baber*, 672 S.W.2d 296, 298 (Tex. Ct. App. 1984) (collecting cases); *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1149-50 (9th Cir. 2009) (Berzon, J., dissenting) (statute did not leave open substitute remedies but impermissibly abrogated common-law rights; *cf. id.* at 1144 (distinguishing *White* and upholding statute where Congress "left in place a number of substitute remedies"); *Butler v. Flint Goodrich Hosp. of Dillard Univ.*, 607 So. 2d 517, 521 (La. 1992) (upholding Louisiana's medical malpractice cap as providing a "quid pro quo" of a "reasonable alternative").

because of these violations.  Compl. ¶¶ 11, 74-76.  Delta relies on a non-binding case[27] for the proposition that Plaintiffs' action cannot seek to enforce the terms of Delta's operating certificate.  Br. at 14 (citing *Peninsula Airport Comm'n v. Nat'l Airlines, Inc.*, 436 F. Supp. 850 (E.D. Va. 1977)).  But Plaintiffs do not ask the Court to enforce the certificate's terms.  Plaintiffs allege that Delta's breaches of common, national, and international law and tortious conduct invalidate its certificate, and it is now operating in violation of §§ 41101 and 44711.

Delta has unclean hands.  It alleges it is not acting discriminatorily and tries to mislead the Court that it is applying an "evenhanded" ban on carriage of trophies.  But it isn't.  Delta's ban only applied to the Big Five, and it continues to carry other trophies.  For this reason, Delta knows or should know it is violating common law and § 41310, and thereby invalidating the terms of its certificate.  Delta's wish to be shielded by provisions of aviation law and regulations it has breached is like asking to enforce, one-sidedly, a contract it has breached, and Delta should be estopped from so doing.[28]

Accordingly, Plaintiffs' claim is properly brought under 49 U.S.C.A. § 46108 (Westlaw through 2015).  But alternatively, if there was ever a case in which a private right of action was appropriate to imply under § 44711(a), this is it.  *Spinner* (cited in Br. at 23) involved a run-of-the-mill personal injury claim brought against a pilot for not having a valid certificate.  *Spinner v. Verbridge*, 125 F. Supp. 2d 45 (E.D.N.Y. 2000).  Here, we have a major air carrier ignoring its common-law duty and embargoing an important resource.  The Ministers of (at least) two African range nations have spoken out against Delta's embargo.  Compl. ¶ 43.  So have agencies

---

[27] The *Peninsula* plaintiff argued defendant air carrier violated the schedule established in its certificate.  However, Plaintiffs allege Delta invalidated its certificate by engaging in unlawful acts not specific to its schedules or routes.

[28] *See, e.g., Stimpson v. Plano Indep. Sch. Dist.*, 743 S.W.2d 944, 946 (Tex. Ct. App. 1987) ("estoppel is … designed to protect the innocent, a party may not urge an estoppel in his favor to shield him from his own tortious acts"); *MJR Corp. v. B & B Vending Co.*, 760 S.W.2d 4, 20 (Tex. App. 1988) (party who has breached contract may not then try to enforce/benefit from it); *Neiman-Marcus Group, Inc. v. Dworkin*, 919 F.2d 368, 371 (5th Cir. 1990).

like the Association of Fish and Wildlife Agencies (see attached letter).  The federal aviation law seeks to effectuate policies such as "preventing unfair, deceptive, predatory, or anticompetitive practices in air transportation," "strengthening the competitive position of [national] air carriers … with foreign air carriers," and "providing [cargo] services without unreasonable discrimination."  § 40101.  Holding Delta accountable for violating the terms of its certificate (which requires compliance with law and regulations) will effectuate these policy goals. Allowing Delta to operate with an unlawful embargo in place, and to continue to violate the law, does nothing to move the goals of the aviation law forward.  In short, Plaintiffs' claim differs from the claim Delta seeks to dismiss.  It is a specific, proper claim under § 41608, and is adequately pleaded to survive a 12(b)(6) motion.

## CONCLUSION

This case boils down to three simple points.  First, Delta is a common carrier holding itself out to carry pretty much everything.  It carries hunting trophies and has only stopped carrying Big Five trophies since its well-timed public announcement during "Cecil mania," which made Delta something of an anti-hunter/animal rights superstar.  But as a common carrier, Delta cannot cater to Facebook activism.  Its embargo bans carriage of a specific type of cargo by a specific class of people from a specific place, with no principled basis, and is unacceptable given its common-law and the statutory duties not to discriminate.  Plaintiffs have properly pleaded a claim that Delta has violated these obligations which survives a 12(b)(6) Motion.

Second, Delta's public announcements and continued enforcement of its unlawful embargo is tortious conduct, aimed at reducing Big Five trophy shipments.  As Delta knew it would, the embargo has stopped Plaintiffs from engaging in business relations.  Delta's tortious conduct – essentially lumping lawful, regulated, internationally sanctioned hunters with

traffickers and poachers – is defamatory.  And it is actionable under Texas law because it does not relate to Delta's "services."  Thus, the Motion as to Count II should be denied.

Finally, to operate as an air carrier, Delta must have a valid certificate.  But its unlawful conduct violates the terms of its certificate, rendering the certificate invalid.  The limited law in this area is not controlling, and Plaintiffs have sufficiently stated a claim that Delta is operating pursuant to an invalid certificate which they can bring under the federal aviation law.

For all these reasons, Plaintiffs' claims survive Delta's Motion, and the Motion should be denied.[29]

January 11, 2016                                 Respectfully submitted,

                                                 */s/ John J. Jackson, III*
                                                 John J. Jackson, III
                                                 D.C. Bar 432019
                                                 Conservation Force
                                                 3240 S I-10 Service Rd W, Suite 200
                                                 Metairie, Louisiana 70001
                                                 jjj@conservationforce.org
                                                 (504) 837-1233 (tel.)
                                                 (504) 837-1145 (fax)

                                                 James C. Hudson
                                                 Texas Bar 10156800
                                                 8235 Douglas Avenue, Suite 525
                                                 Dallas, Texas 75225
                                                 (214) 357-0519 (tel.)
                                                 (214) 572-9735 (fax)
                                                 chris-hudson@att.net

---

[29] To the extent any claim is dismissed, Plaintiffs respectfully request the Court's leave to re-plead, as permitted by Rule 15(a) of the Federal Rules of Civil Procedure.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 11, 2016, a true and correct copy of the foregoing

Response was filed and served via the Court's CM/ECF system upon all counsel of record.

<u>*/s/ John J. Jackson, III*</u>
John. J. Jackson, III