IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

| | |
|---|---|
| CONSERVATION FORCE, DALLAS SAFARI CLUB, HOUSTON SAFARI CLUB, Corey KNOWLTON, the CAMPFIRE ASSOCIATION, and the TANZANIA HUNTING OPERATORS ASSOCIATION,<br><br>*Plaintiff*s,<br><br>v.<br><br>DELTA AIR LINES, INC.,<br><br>*Defendant*. | NO. 3:15-CV-03348-M |

**DEFENDANT DELTA AIR LINES, INC.'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

    I.   The common law allows a common carrier to carve out specific cargo exclusions that apply equally to all shippers, and that is precisely what Delta has done. ..................... 1

    II.  Snippets of dicta from pre-*Sandoval* cases do not establish an implied private right of action under 49 U.S.C. § 41310(a). ......................................................... 4

    III. Plaintiffs' tortious-interference claim challenges Delta's policy of refusing to carry Big Five trophy kills, not Delta's announcement of that policy—but the claim is preempted either way. ................................................................................. 7

    IV. Plaintiffs' claim under the certificate statute fails. ........................................... 10

CONCLUSION ................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alexander v. Sandoval,*
    532 U.S. 275 (2001) ............................................................................................ 1, 4, 5, 6

*Am. Trucking Ass'ns v. Atchison, T. & S. F. Ry. Co.,*
    387 U.S. 397 (1967) .......................................................................................................... 3

*Ass'n of Flight Attendants-CWA v. U.S. D.O.T.,*
    564 F.3d 462 (D.C. Cir. 2009) ...................................................................................... 10

*B.J. Alan Co. v. I.C.C.,*
    897 F.2d 561 (D.C. Cir. 1990) ........................................................................................ 2

*State ex rel. Bd. of R.R. Comm'rs v. Rosenstein,*
    252 N.W. 251 (Iowa 1934) ..................................................................................... 2, 3, 4

*Bonano v. E. Carib. Airline Corp.,*
    365 F.3d 81 (1st Cir. 2004) .............................................................................................. 4

*Boswell v. Skywest Airlines, Inc.,*
    361 F.3d 1263 (10th Cir. 2004) ...................................................................................... 6

*Chukwu v. Bd. of Directors British Airways,*
    889 F. Supp. 12 (D. Mass. 1995),
    *aff'd*, 101 F.3d 106 (1st Cir. 1996) ................................................................................. 9

*Cipollone v. Liggett Grp., Inc.,*
    505 U.S. 504 (1992) .......................................................................................................... 8

*City of Morgan City v. S. La. Elec. Co-op. Ass'n,*
    31 F.3d 319 (5th Cir. 1994) ............................................................................................. 7

*Curr-Spec Partners, L.P. v. C.I.R.,*
    579 F.3d 391 (5th Cir. 2009) .......................................................................................... 7

*De La Paz v. Coy,*
    786 F.3d 367 (5th Cir. 2015) .......................................................................................... 5

*Diefenthal v. C.A.B,*
    681 F.2d 1039 (5th Cir. 1982) .................................................................................... 5, 6

*Domino's Pizza, Inc. v. McDonald,*
    546 U.S. 470 (2006) .......................................................................................................... 6

*Duke Power Co. v. Carolina Envtl. Study Grp., Inc.,*
    438 U.S. 59 (1978) ............................................................................................................ 7

*Galbut v. Am. Airlines, Inc.,*
    27 F. Supp. 2d 146 (E.D.N.Y. 1997) ............................................................................ 9

*Green v. Brantley,*
    981 F.2d 514 (11th Cir. 1993) ...................................................................................... 10

TABLE OF AUTHORITIES
(continued)

Page(s)

*Heaven v. Gonzales*,
   473 F.3d 167 (5th Cir. 2006) ............................................................................................. 6

*Jackson v. Stancil*,
   116 S.E.2d 817 (N.C. 1960) ............................................................................................... 3

*Kan. State Bank & Trust Co. v. Emery Air Freight Corp.*,
   656 F. Supp. 200 (D. Kan. 1987) ....................................................................................... 2

*Ligon v. LaHood*,
   614 F.3d 150 (5th Cir. 2010) ........................................................................................... 10

*Lopez v. Jet Blue*,
   662 F.3d 593 (2d Cir. 2011) ............................................................................................... 6

*Love v. Delta Air Lines*,
   310 F.3d 1347 (11th Cir. 2002) ...................................................................................... 4, 6

*Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*,
   283 F.3d 282 (5th Cir. 2002) ............................................................................................. 7

*Mastercraft Interiors, Ltd. v. ABF Freight Sys., Inc.*,
   284 F. Supp. 2d 284 (D. Md. 2003) ................................................................................... 9

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996) ........................................................................................................... 7

*Mo. Pac. R. Co. v. Larabee Flour Mills Co.*,
   211 U.S. 612 (1909) ....................................................................................................... 2, 3

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992) ................................................................................................. 7, 8, 9

*Nw. Inc. v. Ginsberg*,
   134 S. Ct. 1422 (2014) ....................................................................................................... 8

*Ocean S. S. Co. v. Savannah Locomotive Works & Supply Co.*,
   63 S.E. 577 (Ga. 1909) ....................................................................................................... 3

*Onoh v. Nw. Airlines, Inc.*,
   613 F.3d 596 (5th Cir. 2010) ............................................................................................. 9

*Sam L. Majors Jewelers v. ABX, Inc.*
   117 F.3d 922 (5th Cir. 1997) ............................................................................................. 2

*Schloss v. Wood*,
   17 P. 910 (Colo. 1888) ....................................................................................................... 3

*Shinault v. Am. Airlines, Inc.*,
   936 F.2d 796 (5th Cir. 1991) .......................................................................................... 6, 7

*Shqeirat v. U.S. Airways Grp., Inc.*,
   515 F. Supp. 2d 984 (D. Minn. 2007) ............................................................................... 6

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Smith v. Piedmont Aviation*,
   567 F.2d 290 (5th Cir. 1978) ...........................................................................................5

*Stamps v. Collagen Corp.*,
   984 F.2d 1416 (5th Cir.1993) ............................................................................................7

*Treiber & Straub, Inc. v. U.P.S., Inc.*,
   474 F.3d 379 (7th Cir. 2007) .............................................................................................2

*United States v. Mitchell*,
   271 U.S. 9 (1926) ...............................................................................................................5

*United States v. Segura*,
   747 F.3d 323 (5th Cir. 2014) .............................................................................................6

*Von Anhalt v. Delta Air Lines, Inc.*,
   735 F. Supp. 1030 (S.D. Fla. 1990) ...................................................................................9

*Weber v. U.S. Airways, Inc.*,
   11 F. App'x 56 (4th Cir. 2001) ..........................................................................................9

*Wiggins Ferry Co. v. E. St. Louis Union Ry. Co.*,
   107 Ill. 450 (1883) .............................................................................................................8

**Statutes**

49 U.S.C. § 1374(b) .................................................................................................................5

49 U.S.C. § 41101(a)(1) .........................................................................................................10

49 U.S.C. § 41110(a)(1)(A) ...................................................................................................10

49 U.S.C. § 41110(a)(2) .........................................................................................................10

49 U.S.C. § 41110(a)(2)(B) ...................................................................................................10

49 U.S.C. § 41110(a)(3) .........................................................................................................10

49 U.S.C. § 41310(a) .................................................................................................1, 4, 5, 6, 7

49 U.S.C. § 41705(a) ................................................................................................................6

49 U.S.C. § 41713(b)(1) .......................................................................................................8, 9

49 U.S.C. § 44711(a) ................................................................................................................4

49 U.S.C. § 46110(a) .............................................................................................................10

**Treatises**

13 Am. Jur. 2d *Carriers* § 289 ..................................................................................................2

INTRODUCTION

Each of Plaintiffs' claims fails as a matter of law. First, the common-law rule about cargo exclusions is simple: if you will carry it for anyone, you must carry it for everyone—but you can always decide that you will carry it for no one. Delta carries Big Five trophy kills for no one. That policy is faithful to Delta's duties as a common carrier.

Second, Plaintiffs are grasping at straws when they suggest that Delta is asking the Court to overrule the Fifth Circuit on the question of whether there is an implied private right of action under 49 U.S.C. § 41310(a). The Fifth Circuit has never decided that question. And under the Supreme Court's seminal decision in *Alexander v. Sandoval*, 532 U.S. 275 (2001), the question is not a close one: Congress did not intend to create an implied right of action under § 41310(a).

Third, the Airline Deregulation Act preempts all claims related to an airline's services. Since Delta's Big Five trophy ban is part of Delta's cargo services, Plaintiffs' tortious-interference claim—which attacks that ban—is preempted. Plaintiffs try to recast their claim as a challenge to Delta's public announcement of the trophy ban, but this recasting is equal parts implausible (the ban is the true object of Plaintiffs' ire) and ineffectual (the claim is preempted regardless of whether it attacks the trophy ban or Delta's statement announcing the ban).

Finally, Plaintiffs concede that Delta holds a facially valid certificate of public convenience and necessity. No authority supports Plaintiffs' claim that legal violations by Delta (of which there have been none) could automatically invalidate that certificate.

ARGUMENT

I.  **The common law allows a common carrier to carve out specific cargo exclusions that apply equally to all shippers, and that is precisely what Delta has done.**

The distinction that defeats Plaintiffs' common-law claim is the distinction between shippers and cargo. The common law's duty of equal treatment requires a common carrier "to

treat all shippers alike" and prohibits a carrier from refusing "to do for one [shipper] that which it [is] doing for others." *Mo. Pac. R. Co. v. Larabee Flour Mills Co.*, 211 U.S. 612, 620, 619 (1909). Delta's trophy ban is faithful to that duty. Delta's ban does not treat any would-be shipper of a Big Five trophy kill any better or worse than any other would-be Big Five shipper.

The common law neither requires a common carrier to accept all types of cargo nor prohibits a carrier from refusing to accept a particular type of cargo. To the contrary: a common carrier has a duty to carry only those types of goods that it publicly holds itself out as being willing to carry. *E.g.*, *State ex rel. Bd. of R.R. Comm'rs v. Rosenstein*, 252 N.W. 251, 254 (Iowa 1934); 13 Am. Jur. 2d *Carriers* § 289. This "holding out" principle allows a carrier to carve out specific exclusions from its offer to carry cargo. For example, a carrier may refuse to carry:

- any cargo the actual value of which exceeds $50,000, *Treiber & Straub, Inc. v. U.P.S., Inc.*, 474 F.3d 379, 386 (7th Cir. 2007);
- "[m]oney, currency, bonds, bills of exchange, deeds, promissory notes, negotiable securities, or stock certificates," *Kan. State Bank & Trust Co. v. Emery Air Freight Corp.*, 656 F. Supp. 200, 205 (D. Kan. 1987); or
- "common fireworks," *B.J. Alan Co. v. I.C.C.*, 897 F.2d 561, 562 (D.C. Cir. 1990).

A carrier is free to enforce any cargo exclusion it sees fit in the exercise of its business judgment, as long as the exclusion applies to all shippers. *Mo. Pac.*, 211 U.S. at 620 (carrier "undoubtedly" is entitled make a change to its cargo policies that applies "in behalf of shippers generally").[1]

Plaintiffs have failed to carry their burden of identifying a common-law cause of action that was clearly established as of 1978 and entitles them to relief on the facts of this case. *See Sam L. Majors Jewelers v. ABX, Inc.* 117 F.3d 922, 928 & n.13 (5th Cir. 1997). The cases they rely on address a totally different situation: a carrier's refusal to accept a certain type of cargo

---

[1] The passage of time has not dimmed *Mo. Pac.*'s vitality. Today, common carriers routinely enforce cargo exclusions on items such as live birds shipped for commercial purposes, packages containing wet ice, Rhesus-Macaque monkeys used for scientific research, lottery tickets, and artwork. Examples are available here and here.

from one shipper even though the carrier accepts that same type of cargo from other shippers:

- *Mo. Pac. R. Co.*, 211 U.S. at 619: a common carrier "engaged in the business of transferring cars" between rail lines could not refuse to transfer cars on behalf of a mill company when "it continued to do so for all parties except the mill company."
- *Am. Trucking Ass'ns v. Atchison, T. & S. F. Ry. Co.*, 387 U.S. 397, 399–400, 407 (1967): common carriers that "offer trailer-on-flatcar (TOFC or 'piggyback') service to the public . . . must make such service available on the same terms to" their competitors.
- *Ocean S. S. Co. v. Savannah Locomotive Works & Supply Co.*, 63 S.E. 577, 578 (Ga. 1909): a common carrier that is "accustomed to carry the particular commodity offered it by the plaintiff" cannot refuse to carry the commodity on behalf of the plaintiff.

In short, Plaintiffs are right that the common law does not allow common carriers "to choose what they shipped based on nothing more than the shipper's identity," (Resp. at 9), but Plaintiffs are wrong to suggest that principle is relevant here. The identity of the shipper is irrelevant to Delta's Big Five trophy ban; Delta will not accept Big Five trophy kills from anyone.

Plaintiffs respond by contending—quite implausibly—that Delta holds itself out as being willing to carry Big Five trophy kills as cargo. (Resp. at 9–10). Holding out is a public indication of willingness to carry that is accomplished by some kind of public statement or announcement. *Rosenstein*, 252 N.W. at 253–54; *Jackson v. Stancil*, 116 S.E.2d 817, 825 (N.C. 1960); *Schloss v. Wood*, 17 P. 910, 911–12 (Colo. 1888). Delta's public announcement of its Big Five trophy ban—which is reprinted in paragraph 41 of the complaint and available [here](here) and [here](here)—had the effect of excluding a discrete, defined type of cargo from the offer to provide cargo services that Delta holds out to the public. The fact that Plaintiffs filed this lawsuit is clear evidence they are well aware that Delta is no longer willing to carry Big Five trophy kills.[2]

Plaintiffs also contend that Delta must carry Big Five trophy kills because Delta carries

---

[2] Plaintiffs contend that the complaint "adequately pleads that Delta . . . holds itself out to everyone and not as limited to particular goods," (Resp. at 11), but the six cited paragraphs of the complaint merely contain generic descriptions of Delta's business, a summary of Delta's trophy-carriage policy before the enactment of the Big Five trophy ban, and various legal conclusions. The allegation in paragraph 41 that Delta publicly announced its Big Five trophy ban affirmatively establishes that Delta does not hold itself out as willing to carry Big Five trophy kills.

other kinds of trophies, but this argument reduces to absurdity. If it were true, an airline that accepted hunting shotguns as checked baggage would also have to accept AK-47s and grenade launchers. Not surprisingly, the case law rejects this position. "At common law no person was a common carrier of any article unless he . . . held himself out as such; . . . if he held himself out as a common carrier of confectionery and spices, the common law would not compel him to be a common carrier of bacon, lard, and molasses." *Rosenstein*, 252 N.W. at 254 (quotation omitted). Just as carrying some foods does not mean a carrier must carry all types of food, the fact that Delta carries other types of trophies does not mean Delta must also carry Big Five trophy kills.

II. **Snippets of dicta from pre-*Sandoval* cases do not establish an implied private right of action under 49 U.S.C. § 41310(a).**

As Delta explained in its opening brief: (1) the Federal Aviation Act's antidiscrimination provision, 49 U.S.C. § 41310(a), does not create an individual right (Mot. at 17–18); (2) the Act contains a comprehensive suite of alternative remedies (*id.* at 18–21); and (3) there is an express private right of action under a different provision of the Act (*id.* at 22–23). These three features of the Act foreclose Plaintiffs' argument for an implied right of action under § 41310(a).[3]

Plaintiffs fail to come to grips with the fact that the Supreme Court's decision in *Alexander v. Sandoval*, 532 U.S. 275 (2001) "changed the legal landscape" so significantly that it "rendered unpersuasive the reasoning employed in previous cases in which private rights had been implied" under the Federal Aviation Act. *Bonano v. E. Carib. Airline Corp.*, 365 F.3d 81, 86 n.4 (1st Cir. 2004) (citing *Love v. Delta Air Lines*, 310 F.3d 1347, 1358–59 (11th Cir. 2002)). This sea change in the federal courts' approach to implied rights of action explains why all but one of the out-of-Circuit cases on which Plaintiffs rely were decided decades before *Sandoval*,

---

[3] The Fifth Circuit has never recognized a private right of action under 49 U.S.C. § 44711(a), which requires Delta to comply with the terms of its FAA-issued operating certificate. By dismissing "a brand-new private right of action analysis [as] unnecessary" (Resp. at 15), Plaintiffs have abandoned their claim under § 44711(a).

while the one case that postdates *Sandoval* does not even cite it. (Resp. at 13 & nn.18–19).

Because their argument for an implied right of action under § 41310(a) is hopelessly irreconcilable with *Sandoval*, Plaintiffs latch onto three Fifth Circuit cases that were decided long before *Sandoval*. But none of those cases decided the question presented in this case.

*Smith v. Piedmont Aviation*, 567 F.2d 290 (5th Cir. 1978), did not recognize a private right of action under § 41310(a).[4] *Smith* reviewed an award of damages under the statute without breathing a word on the question of whether § 41310(a) is privately enforceable. *See id.* at 292. The Fifth Circuit later acknowledged that *Smith* had skipped an important step by reviewing the damages award without first "discussing the existence of a private right of action." *Diefenthal v. C.A.B.*, 681 F.2d 1039, 1050 (5th Cir. 1982). It is "black letter law" that "a question not raised by counsel or discussed in the opinion of the court" has not "been decided merely because it existed in the record and might have been raised and considered." *De La Paz v. Coy*, 786 F.3d 367, 373 (5th Cir. 2015) (quoting *United States v. Mitchell,* 271 U.S. 9, 14 (1926)). Thus, *Smith* is not precedent on the question of whether there is a private right of action under § 41310(a).

Indeed, *Diefenthal* confirms that *Smith* did not resolve the private-right-of-action question. The Fifth Circuit concluded that the *Diefenthal* plaintiffs could not prevail on the merits of their claim "*even if* an implied right of action exists under section [41310(a)]." *Id.* (emphasis added). If the *Diefenthal* Court had considered *Smith* to be controlling on the private-right-of-action question, there would have been no reason to include that "even if" clause.

*Diefenthal* itself does not hold that a private right of action exists under § 41310(a).

---

[4] The statute at issue in *Smith* and *Diefenthal* was actually 49 U.S.C. § 1374(b), which was re-codified as § 41310(a) in 1994. The statutes are substantively identical, so for simplicity this brief uses § 41310(a) to refer to both of them.

5

Rather, *Diefenthal* assumed—without deciding—that a private right of action existed. *Id.* at 1050–51. When a court "decide[s] [a] particular legal issue[] while assuming without deciding the validity of [an] antecedent proposition[]," that assumption is "not binding in future cases that directly raise the question[.]" *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 478–79 (2006) (quotation omitted). Because *Diefenthal* concluded that the plaintiffs could not recover under § 41310(a), it was not required to—and did not—decide the antecedent question of whether there is a private right of action under § 41310(a). Therefore, *Diefenthal*'s statement about that question is dicta, which this Court is "free to disregard" if the Court "find[s] it unpersuasive." *United States v. Segura*, 747 F.3d 323, 328–29 (5th Cir. 2014) (citation omitted).

Delta made all of these arguments in its opening brief (Mot. at 23 n.7), yet Plaintiffs respond to none of them.

Finally, Plaintiffs also point to *Shinault v. American. Airlines, Inc.*, 936 F.2d 796 (5th Cir. 1991), but *Shinault* is neither binding nor persuasive. *Shinault* recognized an implied private right of action to enforce a different statute—the Air Carrier Access Act ("ACAA"), 49 U.S.C. § 41705(a), which prohibits airlines from discriminating against travelers on the basis of disability. The present case does not arise under the ACAA, so *Shinault* is not binding here. *E.g.*, *Heaven v. Gonzales*, 473 F.3d 167, 173 (5th Cir. 2006). Plus, *Shinault* was decided ten years before the Supreme Court's seminal decision in *Sandoval* and uses a method of analysis— focusing on legislative history to the exclusion of statutory text and structure, *see* 936 F.2d at 800—that *Sandoval* expressly disavowed. (Mot. at 16–17); *Shqeirat v. U.S. Airways Grp., Inc.*, 515 F. Supp. 2d 984, 1001–02 (D. Minn. 2007). All three circuits to consider the question since *Sandoval* have concluded there is no private right of action under the ACAA. *Lopez v. Jet Blue*, 662 F.3d 593, 596–98 (2d Cir. 2011); *Boswell v. Skywest Airlines*, 361 F.3d 1263, 1271 (10th

Cir. 2004); *Love*, 310 F.3d at 1353. As persuasive authority, *Shinault* is entitled to no weight.[5]

### III. Plaintiffs' tortious-interference claim challenges Delta's policy of refusing to carry Big Five trophy kills, not Delta's announcement of that policy—but the claim is preempted either way.

The Airline Deregulation Act preempts Plaintiffs' tortious-interference claim regardless of whether the claim challenges Delta's policy of refusing to carry Big Five trophy kills or Delta's public statement announcing that policy. The Big Five trophy ban is an aspect of Delta's cargo service, and Delta's public announcement was directly and importantly related to the ban.[6]

Under binding Fifth Circuit precedent, a tortious "interference with business relations claim is plainly preempted [where] it involves [a carrier's] prices [or] services to customers." *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 288 (5th Cir. 2002). Thus, deciding whether the ADA preempts Plaintiffs' tortious-interference claim requires a two-step inquiry:

1) What is the conduct by Delta that gives rise to Plaintiffs' tortious-interference claim?
2) Is that conduct one of Delta's services or closely related to one of Delta's services?

If the answer to that second question is "yes," Plaintiffs' claim is preempted. *See, e.g.*, *id.* at 286 (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)).

The complaint makes it clear that the conduct Plaintiffs allege to be tortious is Delta's refusal to carry Big Five trophy kills. *E.g.*, Compl. ¶ 71 (Delta's "imposition of the unlawful embargo proximately caused [Plainitffs'] injuries"); *see also id.* ¶¶ 6, 9, 32, 52–57, 59, 70. In their brief, Plaintiffs argue their "tortious interference claim does not challenge Delta's . . . refusal to provide services," but this argument collapses in on itself before Plaintiffs even finish

---

[5] *Shinault* alluded to a private right of action under § 41310(a), but *Shinault* did not arise under § 41310(a), so that allusion is dicta. *E.g.*, *Curr-Spec Partners, L.P. v. C.I.R.*, 579 F.3d 391, 400 (5th Cir. 2009) (where a statute was "not at issue" in a prior case, a statement in the prior case characterizing the statute "was dicta").

[6] Plaintiffs' constitutional challenge to the ADA's preemption provision is frivolous. *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 88 n.32 (1978); *City of Morgan City v. S. La. Elec. Co-op. Ass'n*, 31 F.3d 319, 321–22 (5th Cir. 1994); *Stamps v. Collagen Corp.*, 984 F.2d 1416, 1425 (5th Cir.1993), *overruled in part on other grounds by Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996).

making it, since Plaintiffs admit their claim "challenges the deceptive and defamatory effect of Delta's embargo." (Resp. at 18)  "Delta's embargo" *is* "a refusal to provide services."  Plaintiffs err by focusing on how Delta's embargo affects them.  What matters under the ADA is not how an airline's conduct affects the plaintiff, but whether the conduct is (or is related to) an airline's service.  And the conduct at issue here is "Delta's refusal to carry Big Five trophies."  (*Id.* at 21)

As for the second step of the preemption inquiry, it is clear that an airline's carriage of cargo (or refusal to carry cargo) is a "service" within the meaning of the ADA's preemption provision. (Mot. at 11)  Indeed, Plaintiffs do not argue otherwise.

On these facts, the case for preemption is open-and-shut, so Plaintiffs try to change the facts.  In their brief, Plaintiffs contend that their claim challenges not Delta's trophy embargo itself, but rather Delta's public statement "announcing its refusal to transport Big Five trophies." (Resp. at 3; *see also id.* at 19–20)  This quasi-defamation claim is completely implausible: would Plaintiffs really not have filed suit if Delta had enacted a trophy ban but used different words to announce it?  In any event, this new, unpleaded claim fares no better.  It, too, is preempted.

The ADA sweeps broadly to preempt any state law—including a common-law cause of action for damages—that is "*related to* a price, route, or service of an air carrier."  49 U.S.C. § 41713(b)(1) (emphasis added); *Morales*, 504 U.S. at 384, 388; *Nw. Inc. v. Ginsberg*, 134 S. Ct. 1422, 1429–30 (2014); *see also Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 521 (1992).

Delta's public announcement of its Big Five trophy ban was closely related to the ban itself—indeed, the announcement was an indispensable component of the ban.  As discussed above, a common carrier has a duty to carry any kind of cargo that it holds itself out to the public as being willing to carry.  *Supra* section I.  Thus, a common carrier cannot stop carrying a certain kind of cargo unless it also stops holding itself out as willing to carry that cargo.  *E.g.*, *Wiggins*

8

*Ferry Co. v. E. St. Louis Union Ry. Co.*, 107 Ill. 450, 458 (1883). And that is exactly what Delta's public announcement of its trophy ban accomplished: it brought an end to Delta's holding itself out as willing to carry Big five trophy kills. Thus, the public announcement that Plaintiffs seek to challenge in their new unpleaded defamation claim is not merely "related to a . . . service of an air carrier" under § 41713(b)(1); it communicated and defined the very scope of the cargo service that Delta provides as an air carrier. Delta could not have enacted its trophy ban without making some kind of public statement putting the traveling public on notice that Delta is no longer willing to carry Big Five trophy kills. Accordingly, the ADA preempts any claim challenging Delta's announcement of its Big Five trophy ban. *See Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596, 600 (5th Cir. 2010) (a state-law tort claim challenging a statement made by an airline employee explaining the airline's reason for refusing to provide service to the plaintiff was preempted because the carrier's "decision to deny [the passenger] boarding [could] not be divorced from its stated reasons for denying her boarding").

Plaintiffs cite four cases in support of their argument that a challenge to Delta's announcement of the trophy ban would not be preempted (Resp. at 17–18), but those cases involved an airline's statements about the plaintiff, not about the airline's prices or services. The claims in those cases were not preempted not because there is a "defamation exception" to the ADA, but because the airline's conduct had nothing to do with its prices, routes, or services. Where, as here, an airline makes a statement describing its own services, the statement is directly related to the services, and any state-law tort claim challenging the statement is preempted.[7]

---

[7] *See, e.g.*, *Morales*, 504 U.S. at 388–91 (false advertising); *Mastercraft Interiors, Ltd. v. ABF Freight Sys., Inc.*, 284 F. Supp. 2d 284, 288 (D. Md. 2003) (misrepresentation); *Weber v. U.S. Airways, Inc.*, 11 F. App'x 56, 57–58 (4th Cir. 2001) (per curiam) (fraud); *Chukwu v. Bd. of Dirs. British Airways*, 889 F. Supp. 12, 13 (D. Mass. 1995), *aff'd*, 101 F.3d 106 (1st Cir. 1996) (slander); *Galbut v. Am. Airlines, Inc.*, 27 F. Supp. 2d 146, 152–53 (E.D.N.Y. 1997) (slander); *Von Anhalt v. Delta Air Lines, Inc.*, 735 F. Supp. 1030, 1030 (S.D. Fla. 1990) (defamation).

9

**IV.     Plaintiffs' claim under the certificate statute fails.**

By obtaining a certificate of public convenience and necessity authorizing its current flight operations between Atlanta and Johannesburg, *see* ECF 11-3, Delta has done everything that 49 U.S.C. § 41101(a)(1) requires. Plaintiffs try to avoid this inevitable conclusion by arguing that Delta has violated other laws, these violations invalidate Delta's certificate, and the invalidity of Delta's certificate creates a violation of § 41101(a)(1). There is a reason why Plaintiffs do not cite even one authority in support of this argument: every leg of it is incorrect.

Delta has violated no law. As explained above, Delta is well within its rights to refuse to carry Big Five trophy kills. There is nothing unlawful or tortious about Delta's trophy ban.

Legal violations (and again, there are none here) do not automatically void a certificate. Rather, a DOT-issued certificate "remains in effect until" the DOT "suspends or revokes" it. 49 U.S.C. § 41110(a)(1)(A). Certain legal infractions give the DOT grounds to revoke a certificate, *id.* § 41110(a)(2)(B), but only after the DOT has given the carrier "notice and an opportunity for a hearing," *id.* § 41110(a)(2), and a reasonable opportunity to cure, *id.* § 41110(a)(3).

Finally, § 41101(a)(1) does not allow a plaintiff to challenge a carrier's certificate as invalid. The federal courts of appeals have exclusive jurisdiction over challenges to DOT-issued certificates (which must begin at the agency level with proceedings initiated by DOT or FAA). 49 U.S.C. § 46110(a); *Ligon v. LaHood*, 614 F.3d 150, 154 (5th Cir. 2010); *Ass'n of Flight Attendants-CWA v. U.S. D.O.T.*, 564 F.3d 462, 463 (D.C. Cir. 2009). Plaintiffs cannot circumvent this grant of exclusive jurisdiction by challenging the validity of Delta's certificate before this Court. *See, e.g., Green v. Brantley*, 981 F.2d 514, 520 (11th Cir. 1993) ("collateral attacks upon administrative orders are not permissible" (quotation omitted)).

## CONCLUSION

For these reasons, Delta respectfully asks the Court to dismiss this case with prejudice.

DATED:  January 25, 2016                Respectfully submitted,

                                        */s/ Russ Falconer*_____
                                        Russell H. Falconer
                                        SBN 24069695
                                        GIBSON, DUNN & CRUTCHER LLP
                                        2100 McKinney Avenue, Suite 1100
                                        Dallas, Texas  75201-6911
                                        Telephone:  (214) 698-3170
                                        Facsimile:  (214) 571-2958
                                        rfalconer@gibsondunn.com

                                        **ATTORNEY FOR DELTA AIR LINES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2016, a true and correct copy of the foregoing document was served via the CM/ECF system upon all counsel of record.

*/s/ Russ Falconer*
Russell H. Falconer
