IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CONSERVATION FORCE, § | | |
| DALLAS SAFARI CLUB, § | | |
| HOUSTON SAFARI CLUB, § | | |
| COREY KNOWLTON, § | | |
| the CAMPFIRE ASSOCIATION, and the § | | |
| TANZANIA HUNTING OPERATORS § | | |
| ASSOCIATION, § | | |
| § | | |
| Plaintiffs, § | | |
| v. § | No. 3:15-CV-3348-M | |
| § | | |
| DELTA AIR LINES, INC., § | | |
| § | | |
| Defendant. § | | |

**MEMORANDUM OPINION & ORDER OF DISMISSAL**

The Court has before it the Motion to Dismiss for Failure to State a Claim of Defendant Delta Air Lines, Inc. ("Delta").

After reviewing the parties' briefing and the applicable law, the Court **GRANTS** Delta's Motion.

I.   **BACKGROUND[1]**

This dispute arises out of Delta's decision to stop transporting trophies of lions, leopards, elephants, rhinoceroses, and buffalo that have been legally hunted. These animals are commonly known as the "Big Five." Pls.' Compl. [Docket Entry #1] at ¶ 1. Plaintiffs include Corey Knowlton, described in the Complaint as a hunter-conservationist, as well as domestic and international groups allegedly involved in hunting, conservation and tourism. *Id.* at ¶¶ 13-18.

---

[1] The background is taken from facts set out in the pleadings, which are viewed in the light most favorable to the Plaintiffs. Fed. R. Civ. P. 12(b)(6).

1

In July 2015, after a hunt in Zimbabwe resulted in the death of a lion named Cecil, prompting social media outrage, vandalism, and threats to the hunter and his family, Delta announced it was changing its policy and would no longer transport Big Five trophies. *Id.* at ¶ 38-41. Plaintiffs condemn Delta's decision because, in their view, tourist safari hunting is a successful conservation strategy. *Id.* at ¶ 1-2. According to Plaintiffs, such hunts protect at-risk wildlife, by providing revenue to local conservation and anti-poaching efforts. *Id.* at ¶ 3. Plaintiffs further claim such hunts "incentivize[] locals to protect their wildlife as an asset—not to kill it as a nuisance, danger, or black-market commodity." *Id.* at ¶ 4. Plaintiffs claim that Delta's decision constitutes bad policy and violates the law. *Id.* The Court is concerned only with the legality of Delta's decision.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must have pled "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In analyzing a motion to dismiss for failure to state a claim under Rule 12(b)(6), this Court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The Court will not, however, "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Great Lakes Dredge & Dock Co. LLC v. La. State,* 624 F.3d 201, 210 (5th Cir. 2010).

A "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Howe v. Yellowbook, USA*, 840 F. Supp. 2d 970, 975 (N.D. Tex. 2011) (Lynn, J.) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Lone Star Nat'l. Bank, N.A. v. Heartland Payment Sys., Inc.*, 729 F.3d 421, 423 (5th Cir. 2013) (quoting *Highland Capital Mgmt., L.P. v. Bank of Am., Nat'l Ass'n*, 698 F.3d 202, 205 (5th Cir. 2012)). "Plausible" does not mean "probable," but it asks for "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III.   ANALYSIS

Plaintiffs seek monetary and injunctive relief.  First, they claim that Delta's embargo on the transport of Big Five trophies violates federal common law.  Pls.' Compl. [Docket Entry #1] at ¶¶ 62-67.  Second, Plaintiffs assert, under state law, that the policy is a tortious interference with business relations.  *Id.* at ¶¶ 68-72.  Third, Plaintiffs claim that Delta's policy violates certain federal statutes and regulations.  *Id.* at ¶¶ 73-76.

Delta moves to dismiss each claim, arguing that Plaintiffs' Complaint fails to state a claim for breach of federal common law duties, that Plaintiffs' tortious interference claim is preempted by the Airline Deregulation Act of 1978, and that no private right of action exists to enforce the federal statutes and regulations cited by Plaintiffs.  Def's. Mot. to Dismiss [Docket Entry #11] at 1.

#### A.   Federal Common Law Duties

Plaintiffs claim that, as a common carrier, Delta is prohibited by federal common law from discriminating against Plaintiffs by refusing to transport Big Five trophies.  Pls.' Compl. [Docket Entry #1] at ¶¶ 62-64.  Delta responds that it is free to choose the kind of cargo it accepts for shipment.  *See* Def.'s Mot. to Dismiss [Docket Entry #11] at 4.

More than one hundred and fifty years ago, the Supreme Court held that common carriers are obligated to treat shippers equally. *York Co. v. Cent. R.R.*, 70 U.S. 107, 112 (1865). This equal treatment principle forbids a common carrier from refusing "to do for one [shipper] that which it was doing for others." *Mo. Pac. R. Co. v. Larabee Flour Mills Co.*, 211 U.S. 612, 619 (1909). However, the Supreme Court also acknowledged that common carriers may refuse to carry particular kinds of cargo. *York Co.*, 70 U.S. at 112 ("[H]e may limit his services to the carriage of particular kinds of goods . . ."); *see also B.J. Alan Co. v. I.C.C.*, 897 F.2d 561, 563 (D.C. Cir. 1990) ("a common carrier is free to carve out as large or as small a niche as it feels appropriate.") (citations omitted)); *Riffin v. Surface Transp. Bd.*, 733 F.3d 340, 345 (D.C. Cir. 2013) ("at common law[,] carriers could pick and choose the goods which they would transport in common carriage . . ." (quoting *Akron, Canton & Youngstown R.R. Co. v. ICC,* 611 F.2d 1162, 1166 (6th Cir. 1979)); 13 Am. Jur. 2d *Carriers* § 289 (a "common carrier of goods is not obliged to receive and transport all kinds of goods that may be offered for carriage"). Common carriers are merely barred from "discrimination between persons." *York Co.*, 70 U.S. at 112. In other words, a common carrier may discriminate in what it chooses to carry, but it may not discriminate as to the persons for whom it carries.

*Missouri Pacific Railroad Co. v. Larabee Flour Mills Co.*, 211 U.S. 612, 619-20 (1909) provides a good analysis of the issue. The Missouri Pacific Railroad engaged in the business of transporting railroad cars. *Id.* at 619. It provided this service to "all parties except the mill company." *Id.* The Court held that the railroad violated the law by discriminating against the mill company. *Id.* at 619-20. In so holding, the Court rearticulated the equal treatment principle

4

first announced in *York Co.*: "a party engaging in the business of a common carrier is bound to treat all shippers alike and can be compelled to do so." *Id.* at 620.[2]

Plaintiffs agree that a common carrier "is permitted to define its own market," but suggest that this right does not give Delta free reign to refuse shipment of any type of cargo. Pls.' Resp. [Docket Entry #13] at 7-9. For instance, citing *Sierra Club v. BNSF Railyard Co.*, No. 1:13-CV-00272-LRS, 2014 WL 53309, at *1 (E.D. Wash. Jan. 2, 2014), Plaintiffs argue that a common carrier "may not show favoritism among shippers or shipments based on the type of cargo" they ship. *Id.* at 8. Accord, *Ocean S.S. Co. v. Savannah Locomotive Works & Supply Co.*, 63 S.E. 577, 578-79 (Ga. 1909). *Id.* at 9.

These cases, as well as others cited by Plaintiffs, do little to cast doubt on the equal treatment principle articulated over a century ago in *York*. In *Sierra Club*, an environmental group brought claims for violations of the Clean Water Act. 2014 WL 53309, at *1. In the background section of the opinion, the district court stated, in dictum, that the defendant railroad could not refuse to transport coal. *Id.* at *2. However, in making that statement, the court was quoting 49 U.S.C. § 11101(a), a federal statute expressly relating only to "rail carriers." Furthermore, the opinion turned on whether plaintiffs had sufficiently pleaded that the railroad's coal leakage could be considered "point source" pollution under the Clean Water Act. *Id.* at *3. *Sierra Club* does not analyze a common carrier's common law duties, making it irrelevant to the issue at hand.

In *Ocean S.S. Co. v. Savannah*, 63 S.E. at 580, the Georgia Supreme Court held that a steamship's preferential treatment of cotton-shipping customers over lumber-shipping customers

---

[2] Although *Larabee* evaluated state common law, rather than federal common law, the Supreme Court in *York* adopted the equal treatment principle that was applicable on a national basis. *See* 70 U.S. at 112.

5

was a violation of the steamship's state common law duties. Thus, the opinion is neither persuasive nor binding to the issue presented here.

None of the cases cited by Plaintiffs contradict the conclusion that a common carrier is free, without violating federal common law, to carry only items of its choosing, provided that it does not discriminate among customers. Indeed, Plaintiffs' contention that they have stated a claim because Delta "violates its duty of equal treatment by refusing to ship one type of trophy . . . by one type of shipper" misapplies the equal treatment principle. Pls.' Resp. [Docket Entry #13] at 11. Delta's policy bans its shipment of Big Five trophies. Obviously, it does not ban the hunting of Big Five game. Such hunters are free to ship allowed cargo with Delta, including trophies of other game. Although, because Plaintiffs are hunters or other parties who benefit from the hunting of the Big Five, Delta's ban negatively affects them, that impact does not mean Delta's decision is unlawful or actionable.

Plaintiffs also contend that Delta violates the common law against discrimination because it has not in fact defined a market of what it will and will not ship. Pls.' Resp. [Docket Entry #13] at 9. Plaintiffs quote Delta's marketing materials, stating that "'[n]o matter what you're shipping—or where you're shipping it to—we have a variety of services that can help ensure proper handling and a safe delivery.'" *Id.* at 9 (quoting Delta Air Cargo Website).

Plaintiffs' argument is unavailing. Delta's public announcement makes clear that it will not transport Big Five trophies. Pls.' Compl. [Docket Entry #1] at ¶ 41 (citing Delta's Aug. 3, 2015 announcement). Obviously, Delta's marketing materials do not constitute an agreement by it to ship anything a potential customer might tender for shipment. The Court construes Plaintiffs' claim as arguing that Delta has somehow skipped a formality required to hold itself out as a non-carrier of Big Five trophies. "Hold out" means "[t]o represent (something) as true."

*Hold out*, Black's Law Dictionary (10th ed. 2014). Case law is to the same effect. *Jackson v. Stancil*, 116 S.E.2d 817, 824 (N.C. 1960) (noting that holding out requires that a "carrier in some way makes known to its prospective patrons the fact that its services are available") (citations omitted); *Schloss v. Wood*, 17 P. 910, 911-12 (Colo. 1888) (explaining that a common carrier "can hold himself out as a common carrier by engaging in the business generally, or by nouncing [sic] or proclaiming it by cards, advertisements, or by any other means that would let the public know that he intended to be a common or general carrier for the public") (citations omitted). It is clear that Delta has held itself out as not a shipper of Big Five trophies, and thus has defined its market. No more is required for it to do so.

Finally, Plaintiffs assert that Delta has not carved hunting trophies out of its market, because it continues to transport non-Big Five trophies from Africa. Pls.' Resp. [Docket Entry #13] at 10. That position is true, but it has no legal impact. Delta is free to hold itself out as a carrier of some, but not all, hunting trophies, even if the justification for that decision is the avoidance of adverse publicity.

For the above reasons, the Court **GRANTS** Delta's motion to dismiss Plaintiffs' federal common law claim.

### B. Tortious Interference with Business Relations

Delta moves to dismiss Plaintiffs' tortious interference claim, arguing it is preempted by the Airline Deregulation Act of 1978. Def.'s Mot. to Dismiss [Docket Entry #11] at 9. The Airline Deregulation Act dismantled significant regulations of the airline industry. *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 927-28 (5th Cir. 1997); *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 335 (5th Cir. 1995). In doing so, Congress determined "that efficiency, innovation, low prices, variety, and quality would be promoted by reliance on competitive

...

market forces rather than pervasive federal regulation." *Hodges*, 44 F.3d at 335. "To ensure that the states would not *re*-regulate what Congress had decided to *de* regulate [sic], the Act incorporated a preemption provision," *Taj Mahal Travel v. Delta Airlines*, 164 F.3d 186, 191 (3d Cir. 1998) (emphasis in original) (rephrasing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992)), prohibiting states from enacting any "law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C § 41713(b)(1).

The preemption provision of § 41713(b)(1) has been interpreted broadly. As the Fifth Circuit has held, "[a]ny state law, including state common law, 'having a connection with or reference to' airline prices, routes, or services is preempted." *Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596, 599 (5th Cir. 2010) (quoting *Morales*, 504 U.S. at 384). Put another way, any state law having a "'forbidden significant effect' on rates, routes or services" is preempted. *Hodges*, 44 F.3d at 336 (quoting *Morales*, 504 U.S. at 388). However, an impact that is highly tenuous, remote or peripheral may not be preempted. For example, the statute does not preempt state law breach of contract claims. *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995). However, the case law has not clearly set out the extent to which the Act preempts state tort claims. As the Second Circuit stated, "[t]he 'related to' language of the ADA provides neither a predictable nor practical formula for distinguishing preempted from non-preempted state and local laws, and the Supreme Court has provided little guidance as to the meaning of 'related to' after *Morales* and *Wolens*." *Abdu-Brisson v. Delta Airlines, Inc.*, 128 F.3d 77, 82 (2d Cir. 1997). Courts "must examine the underlying facts of each case to determine whether the particular claims at issue 'relate to' airline rates, routes or services." *Travel All Over the World*, 73 F.3d at 1432.

Although it has not definitively established the line in close cases, the Fifth Circuit has defined "services":

> "Services" generally represent a bargained-for or anticipated provision of labor from one party to another. If the element of bargain or agreement is incorporated in our understanding of services, it leads to a concern with the contractual arrangement between the airline and the user of the service. Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself. These matters are all appurtenant and necessarily included with the contract of carriage between the passenger or shipper and the airline. It is these [contractual] features of air transportation that we believe Congress intended to de-regulate as "services" and broadly to protect from state regulation.

*Id.*

The Fifth Circuit preempted a tortious interference claim asserted against an airline in *Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 283 F.3d 282, 288 (5th Cir. 2002). In *Lyn-Lea Travel Corp.*, a travel agency sued American Airlines for damages arising out of the airline's decision to reduce commissions it paid to travel agencies. *Id.* at 284-85. The asserted claims included breach of contract, fraud, violations of the Texas Deceptive Trade Practices Act, and tortious interference with business relations. *Id.* at 285. On appeal, the Fifth Circuit held that the agency's claim that American "intentionally interfered with its business relationships . . ." by "luring the customers away with discounted fares" . . . "had a significant relationship to the economic aspects of the airline industry." *Id.* at 287. The court, therefore, concluded that the claim was preempted because it had a connection to American's "prices and services." *Id.* at 288.

Plaintiffs argue that their tortious interference claim is not preempted, because it does not relate to a "service" of Delta. Pls.' Resp. [Docket Entry #13] at 16. Plaintiffs attempt to distinguish *Lyn-Lea* by characterizing it as a "dispute between a travel agent and a carrier over the computer system the agent used to book tickets," which "suggests a direct relationship to

prices and services." *Id.* Plaintiffs analyze their claim as more akin to a defamation suit, since a number of courts have found such cases not preempted by § 41713(b)(1), as unrelated to the carrier's services. *See e.g., Travel All Over the World v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1428, 1433 (7th Cir. 1996); *Wainwright's Vacations, LLC v. Pan Am. Airways Corp.*, 130 F. Supp. 2d 712, 724 (D. Md. 2001).

Plaintiffs also argue that Delta's public decision to cease carrying Big Five trophies, combined with its statements that its previous policy to carry such trophies was in "absolute compliance" with government regulations, had the defamatory effect of wrongly suggesting that Big Five trophy hunting was unlawful. Pls.' Resp. [Docket Entry #13] at 19. In support of that position, Plaintiffs cite statements of activists opposed to Big Five hunting, who view Delta's decision as a moral statement against such hunting. *Id.* Plaintiffs characterize their tortious interference damages as "the impact of the public announcement of the trophy embargo on Plaintiffs' businesses." *Id.* at 20. They say they challenge "the deceptive and defamatory *effect* of Delta's embargo and its negative impact on Plaintiffs' business relations." *Id.* at 18-19 (emphasis added).

Finally, Plaintiffs argue that application of the Airline Deregulation Act to preempt their tortious interference claim would be an unconstitutional taking, in violation of due process, because it deprives Plaintiffs of any private recovery without providing a substitute for what was eliminated. *Id.* at 21.

The Court concludes that the facts behind Plaintiffs' claims here relate to airline services. Although Plaintiffs correctly conclude that claims arising out of defamatory conduct would not usually relate to an airline's service, Plaintiffs' tortious interference claim in this case does relate to Delta's services. In *Travel All Over the World*, a travel agency brought suit for tortious

interference with a business relationship, defamation, and slander. 73 F.3d at 1428. The travel agency alleged that the defendant airline told its clients that the agency was not reputable and that it often lied to its customers. *Id.* at 1433. In holding that the slander and defamation claims were not preempted, the court concluded that such statements made no express reference to airline rates, routes, or services, nor did it have a forbidden significant effect on rates, routes or services. *Id.* The court also declined to dismiss the plaintiffs' tortious interference claim, but only because it could not at that stage determine "if the plaintiffs' claims [were] solely based on [defendant's] slanderous and defamatory comments." *Id.* at 1435. The court noted that "to the extent that the intentional tort claims are based on [defendant's] refusal to transport passengers . . . such claims 'relate to' [defendants'] services and are preempted by the [Act]." *Id.*

Here, Plaintiffs' tortious interference claim is not based on slanderous and defamatory comments by Delta. There is, in fact, no defamatory statement alleged. Delta merely altered the scope of its services by refusing to transport a designated kind of commodity—Big Five trophies. It never said the hunting or transport of such species was unlawful. The Fifth Circuit's definition of service includes not only "baggage handling," but also, "the transportation itself." *Hodges*, 44 F.3d at 336. Delta's decision—a ban on its carrying Big Five trophies—is a refusal to provide transportation. The effort to impose liability for it doing so, under the guise of a tortious interference claim, runs afoul of the Airline Deregulation Act's preemption clause.

Plaintiffs argue that their claim challenges Delta's statement about not transporting Big Five trophies, not Delta's refusal to provide services. The Court rejects that analysis. Any claim challenging the statement is also a challenge to the refusal of service, because the way that an airline or any common carrier limits its services is by informing potential customers of that decision.

Finally, Plaintiffs' constitutional challenge to the Act's preemption provision is without legal foundation. The Court has found no case requiring Congress to replace all claims previously available under state law whenever a federal statute preempts them.

For these reasons, the Court **GRANTS** Delta's Motion to Dismiss Plaintiffs' tortious interference claim.

### C. Statutory and Regulatory Claims

Plaintiffs claim that Delta's decision not to transport Big Five trophies violated federal statutes and regulations arising under the Federal Aviation Act ("FAA"). Pls.' Compl. [Docket Entry # 1] at ¶¶ 63, 74, 76.

#### i. 49 U.S.C §§ 41310(a), 44711(a)(4), and FAA regulations

Plaintiffs claim that Delta violated 49 U.S.C § 41310(a), which prohibits air carriers from "subject[ing] a person, place, port or type of traffic in foreign air transportation to unreasonable discrimination," and § 44711(a)(4), which prohibits persons from "operat[ing] as an air carrier without an air carrier operating certificate or in violation of a term of the certificate." *Id.* at ¶¶ 63, 76. Various FAA regulations have been adopted under those provisions, and the Plaintiffs make claims that such regulations were violated as well. *Id.* at ¶ 74.

Delta argues, however, that there is neither an express nor an implied private right of action to enforce any of these provisions. Def.'s Mot. to Dismiss [Docket Entry #11] at 14. Because no section cited includes an express private right of action, the Court must determine whether such rights should be implied.

Over the past half-century, the Supreme Court's approach to implying a private party's right to sue under federal statutes has evolved. Richard H. Fallon, *et al.*, *Hart and Wechsler's the Federal Courts and the Federal System* 705 (6th ed. 2009). In *Cort v. Ash*, 422 U.S. 66

(1975) the Supreme Court abandoned a liberal approach focusing on the purpose of the statute at issue, and replaced it with a four-factor test that "was more restrictive than any of its predecessors." *Landry v. All Am. Assur. Co.*, 688 F.2d 381, 388 (5th Cir. 1982). *Cort* established that "[t]he central inquiry" in determining whether a statute includes "a private cause of action" is whether "Congress intended to create" one. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575 (1979). This inquiry is guided by the following four factors:

> (1) Is the plaintiff one of the class for whose especial benefit the statute was enacted—that is, does the statute create a federal right in favor of the plaintiff?
>
> (2) Is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?
>
> (3) Is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?
>
> (4) Is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort*, 422 U.S. at 78.

The Supreme Court later clarified that an analysis of all four factors is not required. *California v. Sierra Club*, 451 U.S. 287, 298 (1981). In fact, the last two factors are only relevant if "the first two factors give indication of congressional intent to create the remedy." *Id.*

In 2001, the Supreme Court further curtailed the authority of courts to recognize implied rights of action in *Alexander v. Sandoval*, 532 U.S. 275 (2001). While the central inquiry remains whether Congress intended to create a private right of action, *Sandoval* limited how that intent is to be ascertained. Most importantly, *Sandoval* held that "legal context matters only to the extent that it clarifies text." *Id.* at 288. Legislative history and contemporaneous legal context are eschewed in favor of plain-language interpretation. Or, in the Supreme Court's

words, "having sworn off the habit of venturing beyond Congress's intent, [the Court] will not accept [an] invitation to have [another] drink." *Id.* at 287.

Plaintiffs argue that "[a] brand-new private right analysis" evaluating whether a private party can bring a claim under § 41310(a) "is unnecessary" because federal courts, including the Fifth Circuit, "have consistently recognized" a private party's right to sue under that section. Pls.' Resp. [Docket Entry #13] at 12, 15. Plaintiffs cite three Fifth Circuit cases pointing to the conclusion that § 41310(a) implies a private right of action. *Id.* at 12-13 (citing *Smith v. Piedmont Aviation*, 567 F.2d 290, 291 (5th Cir. 1978); *Diefenthal v. Civil Aeronautics Bd.*, 681 F.2d 1039, 1050-51 (5th Cir. 1982); *Shinault v. Am. Airlines*, 936 F.2d 796, 800 (5th Cir. 1991)). Plaintiffs urge that any other decision would ignore binding Fifth Circuit authority. *Id.* at 14. With regard to § 44711(a), Plaintiffs argue that although courts have yet to imply a private right of action under it, this Court should now do so. *Id.* at 23.

In fact, the Fifth Circuit has not yet expressly determined whether a private right of action exists under § 41310(a). In *Smith v. Piedmont Aviation*, the Fifth Circuit affirmed a damage award for a violation of the predecessor statute to § 41310(a), but the brief opinion made no evaluation of the plaintiff's right to sue. 567 F.2d at 291-92. *Id.* The Fifth Circuit later noted this lack of analysis, characterizing the holding in *Smith* as "upholding an award of damages . . . without discussing the existence of a private right of action." *Diefenthal*, 681 F.2d at 1050. It is "black letter law" that "'a question not raised by counsel or discussed in the opinion of the court' has not 'been decided merely because it existed in the record and might have been raised and considered.'" *De La Paz v. Coy*, 786 F.3d 367, 373 (5th Cir. 2015) (quoting *United States v. Mitchell*, 271 U.S. 9, 14 (1926)). *Diefenthal* recognized that principle by noting that the *Smith* court did not engage in the analysis that is required to conclude that a private right of action was

14

implied. *Diefenthal*, 681 F.2d at 1050. Thus *Smith* is not binding on this Court. *Diefenthal*, which dismissed the Plaintiff's claim, noting that "even if a private right of action exist[ed]," the defendant's actions "did not constitute discrimination," is not inconsistent with what the Court is doing here. *Id.*

In *Shinault v. American Airlines*, cited by Plaintiffs, the Fifth Circuit recognized an implied right of action to enforce the Air Carrier Access Act ("ACAA"), 49 U.S.C. § 41705(a), which prohibits airlines from discriminating against travelers on the basis of disability. 936 F.2d at 800. However, the court's analysis in *Shinault* was minimal; the court simply pointed to legislative history in support of its conclusion that a private right existed, concluding that "[p]rivate remedies for discrimination by airlines have traditionally emanated from federal legislation." *Id.* Even if this holding were settled Fifth Circuit precedent with regard to the ACAA, it would only be persuasive authority with regard to § 41310(a). *Heaven v. Gonzales*, 473 F.3d 167, 173 (5th Cir. 2006) (recognizing that the Supreme Court's interpretation of one provision of the Illegal Immigration Reform and Immigrant Responsibility Act did not require the same outcome with respect to one of the Act's other provisions). But most importantly, *Shinault* predates *Sandoval*. In fact, every circuit court considering after *Sandoval* whether Congress implied a private right of action under the ACAA has concluded that no such right exists. *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596-98 (2d Cir. 2011); *Boswell v. Skywest Airlines, Inc.*, 361 F.3d 1263, 1269-71 (10th Cir. 2004) (stating that the plaintiff's "reading of the statute resembles the interpretation of the Fifth and Eighth Circuits in decisions issued before the Supreme Court's shift away from the four-factor *Cort* inquiry"); *Love v. Delta Air Lines*, 310 F.3d 1347, 1358-59 (11th Cir. 2002) (citing *Sandoval*, and noting that *Shinault* "antedated

*Sandoval*, and [was] based on analyses of all four of the *Cort* factors" and that after "*Sandoval*, [it] may not engage in a similarly wide-ranging interpretive inquiry").

In short, decisions before *Sandoval* frequently implied private rights of action without rigorous analysis; they did so by making a somewhat cursory inspection of the statute and its legislative history. *Smith* and *Shinault* are exemplars of such decisions. More recent cases like *Lopez*, *Boswell*, and *Love*, engaged in a methodical analysis, finding no implied right. The Court concludes that *Smith* and *Shinault* are not binding nor persuasive on the matter here presented, and the Court is similarly unconvinced by the other non-binding authorities cited by Plaintiffs, because each such source relies on pre-*Sandoval* reasoning. *See* Pls.' Resp. [Docket Entry #13] at 13 nn. 18-19.

To reach its conclusion on whether a private right is implied, the Court must engage in the required post-*Sandoval* factor analysis. In evaluating the first *Cort* factor, the Court concludes that neither of the cited statutes include any rights-creating language. Specifically, § 41310(a) prohibits an air carrier from subjecting "a person, place, port, or type of traffic in foreign air transportation to unreasonable discrimination." This language is framed as an instruction to the regulated entity, rather than to the person protected. The protected class—those traveling or transporting abroad—is "referenced only as an object of that obligation." *Logan v. U.S. Bank N.A.*, 722 F.3d 1163, 1171 (9th Cir. 2013). The Supreme Court has held that this kind of language creates "no implication of an intent to confer rights on a particular class of persons." *Sandoval*, 532 U.S. at 289. Similarly, § 44711(a)(4)—which provides that a "person may not operate as an air carrier without an air carrier operating certificate or in violation of a term of the certificate"—is also directed to the person regulated rather than to those protected. Such statutes are "written . . . simply as a ban on . . . conduct by [the regulated entity]" and thus

do not indicate a congressional intent to make a remedy available to private litigants. *Cannon v. Univ. of Chi.*, 441 U.S. 677, 691-92 (1979) (contrasting statutes that "expressly identify the class Congress intended to benefit . . . with statutory language customarily found in criminal statutes . . . and other laws enacted for the protection of the general public"). Individual rights that generate private remedies are created by statutes using language such as "no person shall be denied the right to vote" or "[a]ll citizens of the United States shall have the same right . . . as is enjoyed by white citizens thereof . . ." *Id.* at 690 n.13 (citations omitted) (cited by *Sandoval*, 532 U.S. at 288-89).

The second *Cort* factor also weighs against implying a private right of action into §§ 41310(a) and 44711(a)(4). The methods these statutes provide for enforcement suggest that Congress did not intend to create private remedies. *See Sandoval*, 532 U.S. at 289-91. The FAA creates an enforcement scheme for administrative proceedings, or by suit in federal court, initiated by the Department of Transportation ("DOT"). 49 U.S.C. § 46101. Furthermore, upon request from the DOT, "the Attorney General may bring a civil action in an appropriate court to enforce" §§ 41310(a) and 44711(a)(4). 49 U.S.C. § 46107(b). Violations of § 41310(a) are also punishable by criminal fines for knowing and willful violations. 49 U.S.C. § 46316. This enforcement scheme, which makes no mention of a private remedy, "provide[s] strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 135 (1985); *see also Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14 (1981) (recognizing that "[i]n view of . . . elaborate enforcement provisions it cannot be assumed that Congress intended to authorize by implication additional judicial remedies for private citizens").

The Court, therefore, concludes that, like other regulatory statutes, Congress did not intend for either § 41310(a) or § 44711(a)(4) to create a private right of action. *See Bonano v. E. Caribbean Airline Corp.*, 365 F.3d 81, 85 (1st Cir. 2004). Because the Court determines that neither of the first two *Cort* factors favor Plaintiffs, it need not evaluate the last two factors. *La. Landmarks Soc., Inc. v. City of New Orleans*, 85 F.3d 1119, 1125 (5th Cir. 1996) (citing *Sierra Club*, 451 U.S. at 298). The Court must also dismiss Plaintiffs' claims that Delta's embargo violates related federal regulations, because a regulation cannot "create a [private right of action] that Congress has not." *Sandoval*, 532 U.S. at 291.

For the above reasons, the Court **GRANTS** Delta's Motion to Dismiss Plaintiffs' claims under §§ 41310(a), 44711(a)(4) and related regulations.

### ii. 49 U.S.C. § 41101

The FAA states that "an air carrier may provide air transportation only if the air carrier holds a certificate issued under this chapter authorizing the air transportation." 49 U.S.C. § 41101(a)(1). This certificate, known as "a certificate of public convenience and necessity" is issued by the Secretary of Transportation. 49 U.S.C. § 41102. Another section of the statute, 49 U.S.C § 46108, allows "[a]n interested person" to "bring a civil action in a district court of the United States . . . to enforce section 41101(a)(1) of this title."

Delta contends that Plaintiffs do not state a claim under 49 U.S.C. § 41101, "because the [DOT] has issued the appropriate certificate of public convenience and necessity to Delta." Def.'s Mot. to Dismiss [Docket Entry #11] at 12. Delta acknowledges that 49 U.S.C. § 46108 allows a plaintiff to bring a civil action to enforce § 41101(a)(1); however, it argues that the scope of such a claim is limited to private plaintiffs bringing suit to ensure that a carrier holds a DOT-issued certificate. *Id.* at 14. According to Delta, a private plaintiff cannot bring a suit

under § 46108 to force a carrier to comply with the certificate's terms; only the DOT can enforce such compliance. *Id.* at 13. Therefore, Delta urges that the exclusive remedy for a breach of duties imposed by the certificate is to petition the appropriate federal agency. *Id.*

Plaintiffs argue that they "did not ask the Court to enforce the certificate's terms," but rather, they claim that Delta's knowing violations of other law, including the common law and 49 U.S.C. § 41310, should invalidate its certificate, either through application of unclean hands or estoppel. Pls.' Resp. [Docket Entry #13] at 23.

The question presented for the Court, therefore, is whether § 46108 allows a private party to sue to invalidate an air carrier's certificate of public convenience and necessity for failure to comply with its terms. The Court concludes that it does not. Plaintiffs again point to little or no legal support for their arguments. They simply apprise the Court of Delta's allegedly bad behavior, without explaining how Delta's actions prompt a legally tenable claim. *Id.* Even if such a claim existed, Plaintiffs fail to convince the Court that they are a party allowed to bring that claim. *Id.* Plaintiffs characterize their claim as an action to invalidate Delta's certificate. Pls.' Resp. [Docket Entry #13] at 23. However, federal courts of appeals have exclusive jurisdiction over challenges to DOT-issued certificates. 49 U.S.C. § 46110 (" . . . a person disclosing a substantial interest in an order issued by the Secretary of Transportation . . . may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business"); *Ligon v. LaHood*, 614 F.3d 150, 154-55 (5th Cir. 2010) ("It is well settled that the review of any order of the FAA Administrator must be taken in a court of appeals"). Thus, Plaintiffs cannot bring their claim under 49 U.S.C. § 41101(a)(1) here.

For the above reasons, the Court **GRANTS** Delta's Motion to Dismiss Plaintiffs' claim under 49 U.S.C. § 41101(a)(1).

## CONCLUSION

Because Plaintiffs have not stated a claim for which relief exists, the Court **GRANTS** Delta's Motion to Dismiss, in its entirety.

**SO ORDERED.**

June 6, 2016.

_____
BARBARA M. G. LYNN
CHIEF JUDGE